551 A.2d 1096

**Deborah CITSAY, Appellee,**

v.

**Harry REICH, M.D., Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 3, 1988.

Filed Dec. 27, 1988.

368

David W. Saba, Wilkes–Barre, for appellant.

Joseph F. Sklarosky, Wilkes–Barre, for appellee.

Before TAMILIA, WATKINS and MONTGOMERY, JJ.

MONTGOMERY, Judge:

The Defendant–Appellant, Harry Reich, M.D., has filed this appeal from a trial court Order denying his Motion for Summary Judgment. The Appellant's Motion was based upon the claim that the Plaintiff–Appellee, Deborah Citsay, instituted the instant medical malpractice action beyond the applicable two year statute of limitations. See the Act of July 9, 1976, P.L. 586, No. 142, § 2, as amended by the Act of December 20, 1982, P.L. 1409, No. 326, art. II, § 201, 42 Pa.C.S.A. § 5524(2). The trial court certified its Order

denying summary judgment as one involving a controlling question of law as to which there is a substantial ground for difference of opinion, and that an immediate appeal from the Order would materially advance the ultimate termination of the case. See the Act of July 9, 1976, P.L. 586, No. 142, § 2, as amended by the Act of April 28, 1978, P.L. 202, No. 53, § 10(2), 42 Pa.C.S.A. § 702. Thereafter, our Court granted the Petition of the Appellant for permission to file an interlocutory appeal.

At the outset, it is appropriate to recognize the legal standards which govern our analysis in this matter. Under Pa.R.C.P. 1035, summary judgment may properly be granted only "... if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In the consideration of a motion for summary judgment, a court must examine the entire record in the light most favorable to the non-moving party, and the court is not to decide issues of fact but merely to determine whether any such issues exist, and to resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Mattia v. Employers Mutual Companies*, 294 Pa.Super. 577, 440 A.2d 616 (1982); *Ritmanich v. Jonnel Enterprises, Inc.*, 219 Pa.Super. 198, 280 A.2d 570 (1981). A party moving for summary judgment has the burden of proof. *Barber v. Harleysville Mutual Insurance Co.*, 304 Pa.Super. 355, 450 A.2d 718 (1982).

This appeal brings before our Court an interpretation of the "discovery rule". That rule, a creation of case law, has been applied in determining the appropriate limitations period in malpractice actions, since it was enunciated in *Ayers v. Morgan*, 397 Pa. 282, 154 A.2d 788 (1959). It essentially dictates that when the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the period prescribed in the limitations statute, the limitation period will

not begin to run until the discovery of the injury is reasonably possible. *Schaffer v. Larzelere*, 410 Pa. 402, 189 A.2d 267 (1963). Stated another way, until one discovers, or through reasonable diligence should have discovered the alleged misdiagnosis or improper procedure employed by the physician, he or she does not have reason to know of the injury, and the running of the statute of limitations with respect to the personal injury cause of action will be delayed until the time of discovery, or the time when discovery became reasonably possible. *Petri v. Smith*, 307 Pa.Super. 261, 453 A.2d 342 (1982); *Acker v. Palena*, 260 Pa.Super. 214, 393 A.2d 1230 (1978). Obviously, the discovery rule is grounded upon considerations of fairness and is designed to assist an injured plaintiff. *Taylor v. Tukanowicz*, 290 Pa.Super. 581, 435 A.2d 181 (1981).

Our courts have also analyzed and explained the kind of knowledge a plaintiff must have to trigger the "discovery" which starts the limitations period clock. In *Anthony v. Koppers Company, Inc.*, 284 Pa.Super. 81, 425 A.2d 428 (1980), rev'd on other grounds, 496 Pa. 119, 436 A.2d 181 (1981), our Court adopted guidelines that provide that the statute of limitations commences in a medical malpractice case when the plaintiff has knowledge, or through the exercise of reasonable diligence should have had knowledge, of: (1) his or her injury; (2) the operative cause of his or her injury; and (3) the causative relationship between his or her injury and the operative conduct. This formula has often been applied in situations such as that presented by the instant appeal. See, for instance, *DeMartino v. Albert Einstein Medical Center, Northern Division*, 313 Pa.Super. 492, 460 A.2d 295 (1983) and *Petri v. Smith, supra.*

Other aspects of the rule deserve special note because of the particular issues presented in this case. First, it is clear that a plaintiff's knowledge of the causative relationship between his or her injury and the operative conduct, the third phase of the knowledge inquiry, does not mean that the plaintiff has to be aware that negligence in treatment has occurred and legal rights or a cause of action

have vested. This point was mentioned in dicta in *Anthony v. Koppers Company, Inc., supra,* and was specifically addressed as an issue and resolved in *DeMartino v. Albert Einstein Medical Center, Northern Division, supra.* Second, we note that while mere mistake, misunderstanding or lack of knowledge do not toll the running of the limitations period, fraud, deception or concealment of relevant facts regarding a medical problem by a defendant physician, whether intentional or unintentional, which misleads an injured party, will toll the statute or estop the defendant from invoking the limitations defense. *DeMartino v. Albert Einstein Medical Center, Northern Division, supra; Acker v. Palena, supra.* However, the burden of proving the existence of such fraud or concealment is on the party asserting it, and such proof must be by clear, precise and convincing evidence. *Nesbitt v. Erie Coach Co.,* 416 Pa. 89, 204 A.2d 473 (1964). A malpractice plaintiff must be expected to exercise reasonable diligence and common sense, and a medical provider's mere reluctance to discuss a problem has been held not to constitute either fraud or concealment, such as would toll the running of the limitations period. See *DeMartino v. Albert Einstein Medical Center, Northern Division, supra;* Cf. *Armacost v. Winters,* 258 Pa.Super. 424, 392 A.2d 866 (1978).

Finally, we recognize that in most situations the question of the application of a statute of limitations defense, especially where a question of due diligence in discovery is raised, is a factual determination for the jury. *Taylor v. Tukanowicz, supra.* However, in an appropriate case the litigation of a limitation issue, independent of the merits of the plaintiff's claim, can be accomplished by invoking the summary judgment procedure. *Mangino v. Steel Contracting Company,* 427 Pa. 533, 235 A.2d 151 (1967).

With all of these concepts in mind, we shall review the pertinent facts presented in this case relating to the limitations issue. The record shows that toward the end of September, 1981, the Plaintiff visited the Defendant, complaining of irregular vaginal bleeding and abdominal pres-

sure. On September 30, 1981, the Plaintiff underwent a procedure known as a diagnostic laparscopy, which involved the insertion of a scope, through a relatively small incision, which permitted a visualization of the pelvic organs. This procedure resulted in a determination that the Plaintiff had a fibroid tumor in her uterus.

On March 8, 1982, the Plaintiff was admitted to the NPW Medical Center, in Wilkes–Barre, Pennsylvania, under the care of the Defendant, for exploratory abdominal surgery, known as a myomectomy. A large fibroid mass was removed from the Plaintiff's uterus during the course of the surgery. Thereafter, on March 13, 1982, the Plaintiff was discharged from the NPW Medical Center.

The Plaintiff related that she felt weak while she was at the hospital. When she was discharged, she also experienced severe pains in the bladder area, together with feelings of pressure and a burning sensation. Therefore, during the early morning hours of March 14, 1982, she returned to the emergency room of NPW Hospital. While there, she noted she was passing blood with her urine. During this second visit to the hospital, the Plaintiff apparently had a catheter inserted.

Dr. Reich was out of town and unavailable when the Plaintiff returned to the hospital. She was visited by one of his colleagues in his medical practice, Dr. Bhatt. However, she also consulted with a urologist, Dr. Stuccio. Dr. Stuccio prescribed some medications, and performed certain tests, including one that involved the use of a scope which allowed the visualization into the Plaintiff's urinary tract. After the tests, Dr. Stuccio told the Plaintiff that there was a hole in her bladder. Further, the Plaintiff admitted in her deposition that Dr. Stuccio told her, at that time, that the perforation in her bladder may have resulted from the surgery Dr. Reich had performed a few days earlier. Dr. Stuccio recommended her use of a catheter for a couple of weeks, as part of the treatment expected to lead to recovery.

The Plaintiff was discharged the second time from NPW Medical Center on March 22, 1982, and thereafter made regular postoperative visits to Dr. Reich, the Defendant. She continued to experience sensitivity in the area of the surgery, and had a pressure or pain feeling when she urinated. During a deposition in this case, the Plaintiff was asked repeatedly whether she ever discussed with the Defendant, Dr. Reich, what Dr. Stuccio had said to her about the perforation in her bladder having arisen from Dr. Reich's surgery. She could only recall that she had mentioned it to him, but had no recollection at all of what she actually said to the Defendant about it. She had no recall of his response on that point, but only remembered that "he didn't say that much about it".

In 1983 or 1984, the Plaintiff sought care from another urologist, Dr. Kabler, at Geisinger Medical Center. She said she did so because she was "looking for a better doctor", who would give her better answers, or find out what actually was wrong with her. She did not think she was getting a satisfactory explanation of her continuing problems from either Dr. Reich or Dr. Stuccio. She was having strange feelings in her bladder, a different type of pain, and did not think that she was getting the right treatment. She related that Dr. Kabler determined that there was blood in her urine, and said that the pressure or urgency of having to urinate "could be the results of what happened." She said that he told her that the hole in the bladder could have weakened the walls of the bladder, and that was probably why she was experiencing sensitivity and other problems in her bladder. The Plaintiff did not testify that she discussed with Dr. Kabler whether or not the hole in her bladder resulted from the surgery which had been performed by Dr. Reich.

The Plaintiff commenced this action by filing a Praecipe for Writ of Summons on January 16, 1986. In her subsequent Complaint, the Plaintiff asserted the following: "14. That on or about January 28, 1984, Plaintiff first learned that Dr. Reich's negligence was the cause of the hole in her

bladder." No other allegations are advanced in the Complaint on that point.

We now may address the issues presented, applying those aspects of the discovery rule enunciated earlier in this Opinion, pursuant to the guidelines applicable in the consideration of a motion for summary judgment. The first question presented is when the Plaintiff either had knowledge, or through the exercise of reasonable diligence should have had knowledge, of her injury, the operative cause of her injury, and the causative relationship between her injury and the conduct of the Defendant with regard to her treatment. It is clear that the Plaintiff was aware during her second hospitalization at NPW Medical Center, under the care of Dr. Stuccio, between March 14, 1982 and March 22, 1982, that she had an injury, comprised of a perforation or hole in her bladder, which caused her sensations of pain, sensitivity, and pressure to urinate. Dr. Stuccio advised her of the perforation during that second hospitalization, and further advised her that it may have arisen in the then-recent surgery which had been performed by Dr. Reich. This clearly made known to the Plaintiff the operative cause of her injury. Finally, such facts also made the Plaintiff aware of the third facet of the discovery rule's knowledge factor, the causative relationship between her injury and the operative conduct, in that she was aware that the Defendant had performed the surgery which purportedly resulted in her problem. In short, prior to March 22, 1982, the Plaintiff was aware that she was having problems, was aware that Dr. Stuccio attributed those problems to a hole in her bladder, and was apprised of the information that the bladder perforation had allegedly arisen from Dr. Reich's surgical procedure. However, she did not institute this litigation until almost four years later, in January, 1986.

On appeal, the Plaintiff–Appellee urges that the two-year limitations period should be considered to have started not from March, 1982, when such matters were known to the Plaintiff, but rather from a later date when she purportedly knew that the conduct of Dr. Reich was negligent. As

discussed earlier in this Opinion, such an argument has been specifically rejected by our Court in *DeMartino v. Albert Einstein Medical Center, Northern Division, supra.* It is clear that awareness of potential legal negligence or the right of a cause of action is not required to satisfy the third element of knowledge under the discovery rule. Accordingly, we reject the contention of the Appellee on that point.

The Appellee also argues that the running of the statute of limitations should be tolled as a result of alleged conduct by Dr. Reich in actively concealing from her any knowledge that his alleged negligence in the surgery resulted in the hole in the bladder which caused her health problems. In support of that assertion, the Plaintiff points out Dr. Reich's deposition testimony, in which he denied that his surgery had caused any perforation in the bladder. That deposition, however, was taken after the instant action was instituted. There is no evidence whatsoever in the record to indicate that Dr. Reich denied to the Plaintiff, in March, 1982, or at any time thereafter, that the hole in her bladder arose during his surgery, or as a result of any action or inaction on his part in connection with that procedure. The only evidence of record on that issue is the Plaintiff's own deposition testimony. In the course of that discovery proceeding, she testified she recalled mentioning to Dr. Reich that Dr. Stuccio had told her that the perforation in her bladder could have been the result of surgery. She recalled no response, if any, from Dr. Reich on that issue. There is not the slightest inference, from any evidence in the record, that Dr. Reich either denied to the Plaintiff that his surgical procedures had caused the problem, or that he attributed the perforation to other causes or problems. It is evident that the Plaintiff has not come close to satisfying her legal burden to prove the existence of concealment or other fraud on the part of the Defendant by clear, precise and convincing evidence. Accordingly, the Plaintiff's testimony that Dr. Reich gave her no real answer did not establish fraud or its equivalent, that would toll the

running of the limitations period. See *DeMartino v. Albert Einstein Medical Center, Northern Division, supra; Armacost v. Winters, supra.*

The Plaintiff–Appellee delayed the filing of this action for more than two years beyond the date when she gained sufficient knowledge to trigger the beginning of the limitations period under the discovery rule. As a result of her failure to exercise reasonable diligence in pursuing her claim, we conclude that it was error for the trial court to deny the Appellant's Motion for Summary Judgment, which was based on the applicable statute of limitations.

The Order of the trial court is reversed, and the Plaintiff's Complaint is hereby dismissed.