602 A.2d 1389

**David J. HOLMES, as Administrator of the Estate of Joanne C. Holmes, Deceased, and David J. Holmes, Individually, Appellant,**

**v.**

**Michael LADO, M.D.**

Superior Court of Pennsylvania.

Argued Dec. 17, 1991.

Decided Feb. 13, 1992.

Petition for Allowance of Appeal Denied July 1, 1992.

Edward M. Brennan, Pottsville, for appellant.

Donald H. Lipson, Allentown, for appellee.

Before CAVANAUGH, FORD ELLIOTT and HOFFMAN, JJ.

HOFFMAN, Judge:

This is an appeal from the order of the Court of Common Pleas of Schuylkill County, granting partial summary judgment in a medical malpractice action. Appellant, David J. Holmes, contends that the trial court erred in granting partial summary judgment because there exists an issue of material fact pertaining to when the victim discovered the injury allegedly caused by appellee. For the following reasons, we affirm.

The record reveals the following facts. On March 17, 1982, Joanne C. Holmes, appellant's wife, consulted appellee, Dr. Michael Lado, concerning lumps that she felt in her right breast. After examining Mrs. Holmes, appellee ordered a mammogram. The mammogram was performed on March 19, 1982 at the Good Samaritan Hospital, and the radiologist report therefrom indicated bilateral cystic changes in both breasts caused by fibrocystic disease. The report also noted that no masses were found and that "no mammographic criteria of malignancy" existed. On April 19, 1985, appellee again examined the lumps in Mrs. Holmes' right breast and ordered a mammogram. On April 22, 1985, another was performed, and again, the radiologist report noted bilateral cystic changes and no masses. Appellee then scheduled Mrs. Holmes for a six-month checkup. Before the six-month period expired, in August, 1985, Mrs. Holmes returned to appellee. Appellee at that time found a mass in Mrs. Holmes' right breast and, as a result, referred her to Dr. Abdul Wahab. From August 26, 1985 to September 1, 1985, Mrs. Holmes was hospitalized so that a biopsy

could be performed. After the biopsy, Mrs. Holmes was diagnosed as having Stage III breast carcinoma. Thereafter, Mrs. Holmes underwent a mastectomy and received chemotherapy. In November 1986, Mrs. Holmes began to experience headaches. A CAT scan revealed metastasis to the right frontal and temporal lobes of the brain[1]. As a result, she received radiation and chemotherapy treatment. In December 1986, Mrs. Holmes developed pulmonary involvement. On March 28, 1987, she died from metastatic breast carcinoma.

On November 15, 1988, appellant filed a medical malpractice action against appellee. Count I of appellant's complaint alleged a cause of action for wrongful death. Count II of the complaint alleged a cause of action for survival. In each count, appellant alleged that appellee had been negligent in failing to properly examine the decedent regarding the lumps found in her right breast, failing to order a biopsy or other diagnostic studies regarding these lumps and failing to take the necessary steps to diagnose the lumps as a malignant tumor. On March 11, appellee made a motion for partial summary judgment with regard to Count II of appellant's complaint, the survival action. Appellee contended that this action was barred by the applicable two-year statute of limitations. On May 1, 1991, the Court of Common Pleas of Schuylkill County granted appellee's motion. This timely appeal followed.

Appellant's sole contention is that the trial court erred in granting summary judgment on the survival action because a material issue of fact exists concerning when the decedent discovered the injury allegedly caused by the appellee. We disagree.

 initially, we note that an order dismissing some but not all counts in a multi-count complaint is generally interlocutory and not immediately appealable. *See Praisner v. Stocker*, 313 Pa.Super. 332, 459 A.2d 1255 (1983).

---

**1.** Metastasis is the transfer of a disease such as cancer from one part or organ of the body to another. *See The American Heritage Dictionary, Second College Edition.*

*See also Hardy v. Pennock Ins. Agency, Inc.,* 365 Pa.Super. 206, 529 A.2d 471 (1987); *Cloverleaf Development, Inc. v. Horizon Financial F.A.,* 347 Pa.Super. 75, 500 A.2d 163 (1985). However, "[i]f the dismissed count states a cause of action that is separate and distinct from the remaining counts, the order dismissing that count is final and appealable; if the dismissed count merely states an alternative theory of recovery, the order dismissing it is interlocutory and not appealable." *Motheral v. Burkhart,* 400 Pa.Super. 408, 416, 583 A.2d 1180, 1185 (1990); *see also Praisner v. Stocker, supra,* 313 Pa.Super. at 341, 459 A.2d at 1260. In the instant case, we find that the dismissed count alleging the survival cause of action is separate and distinct from appellant's remaining count alleging a cause of action in wrongful death.[2] Accordingly, we can proceed to the merits of appellant's contention.

The legal standards which govern our review of a grant of a motion for summary judgment are well-settled. Under Pa.R.Civ.P. 1035(b), summary judgment is properly granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* In considering a motion for summary judgment, a court must examine the entire record in the light most favorable to the non-moving party, and the court is not to decide issues of fact, but merely

**2.** In a survival action, the personal representative of the decedent is substituted for the decedent. The recovery obtained depends on the rights of action which the decedent possessed at the time of her death and, as in a personal injury action, amounts to the damages that the decedent herself sustained. *See McClinton v. White,* 285 Pa.Super. 271, 277, 427 A.2d 218, 221 (1981). On the other hand, in a wrongful death cause of action, recovery depends upon the rights of action that the beneficiaries, as named by statute, possess. Moreover, recovery amounts to the pecuniary loss suffered by the beneficiaries by being deprived of the part of the decedent's earnings they would have received had the decedent lived. *Manning v. Capelli,* 270 Pa.Super. 207, 411 A.2d 252 (1979). Thus, a survival action seeks to compensate for different damages than does an action for wrongful death and as a result, is separate and distinct from a cause of action in wrongful death.

determine if such issues exist, and to resolve all doubts in favor of the non-moving party. *Citsay v. Reich*, 380 Pa.Super. 366, 551 A.2d 1096 (1988); *Mattia v. Employers Mutual Companies*, 294 Pa.Super. 577, 440 A.2d 616 (1982); *Ritmanich v. Jonnel Enterprises, Inc.*, 219 Pa.Super. 198, 280 A.2d 570 (1981). The party moving for summary judgment has the burden of proof. *Barber v. Harleysville Mutual Ins. Co.*, 304 Pa.Super., 450 A.2d 718 (1982). Moreover, ordinarily, the question of whether the defense of statute of limitations applies, especially where there is at issue the diligence of the plaintiff in discovering injury, is a question of fact for the jury. *Taylor v. Tukanowicz*, 290 Pa.Super. 581, 586, 435 A.2d 181, 183 (1981). However, summary judgment based on the statute of limitations will be proper where a plaintiff fails to plead facts sufficient to toll the statute, or admits facts sufficient to concede the statute of limitations defense, or where the plaintiff fails in his response to show that a genuine issue of material fact exists or finally, where plaintiff's evidence is inherently unreliable. *Id.*, 290 Pa.Superior Ct. at 586, 435 A.2d at 184.

■ The applicable statute of limitations for a survival action is two years. 42 Pa.C.S.A. § 5524(2). In determining when this period commences, the discovery rule is applied. *Pastierik v. Duquesne Light Co.*, 514 Pa. 517, 526 A.2d 323 (1987) (citing *Pocono Internat. Raceway v. Pocono Produce, Inc.*, 503 Pa. 80, 468 A.2d 468 (1983)). Under this rule, the statute of limitations does not begin to run until the complaining party knows or reasonably should have known of the existence of an injury to her. *Citsay v. Reich*, 380 Pa.Super. 366, 551 A.2d 1096 (citing *Schaffer v. Larzelere*, 410 Pa. 402, 189 A.2d 267 (1963)). In other words, "until one discovers, or through reasonable diligence should have discovered the alleged misdiagnosis or improper procedure employed by the physician, he or she does not have reason to know of the injury, and the running of the statute of limitations with respect to the personal injury cause of action will be delayed until the time of discovery, or the time when discovery became reasonably possible."

*Citsay v. Reich,* 380 Pa.Super. at 370, 551 A.2d at 1098 (citing *Petri v. Smith,* 307 Pa.Super. 261 453 A.2d 342 (1982); *Acker v. Palena,* 260 Pa.Super. 214, 393 A.2d 1230 (1978)).

The "knowledge" required of the victim/plaintiff in order to commence the statute of limitations has been defined by our courts as knowledge of: (1) his or her injury; (2) the operative cause of his or her injury; and (3) the causative relationship between his or her injury and the operative conduct. *Citsay, supra* (citing *DeMartino v. Albert Einstein Medical Center, Northern Division,* 313 Pa.Super. 492, 460 A.2d 295 (1983); *Petri v. Smith, supra* ). However, while the victim/plaintiff must know of the causative relationship between her injury and the operative cause of action, she does not have to ascertain that the treating physician was negligent or that a legal cause of action exists. *Anthony v. Koppers, Inc.,* 284 Pa.Super. 81, 425 A.2d 428 (1980) *rev'd on other grounds,* 496 Pa. 119, 436 A.2d 181 (1981). Furthermore, mere mistake or misunderstanding is insufficient to toll the statute of limitations for it is "the duty of the one asserting a cause of action against another to use all reasonable diligence to inform herself of the facts and circumstances upon which the right of recovery is based and to institute suit within the prescribed statutory period...." *Taylor v. Tukanowicz,* 290 Pa.Super. 581, 585, 435 A.2d 181, 183 (1981) (quoting *Schaffer v. Larzelere, supra,* 410 Pa. at 405, 189 A.2d at 267).

Applying the aforementioned standards to the instant case, we find that the appellant's deposition testimony reveals that the decedent possessed the requisite degree of knowledge to commence the statute of limitations in August, 1985. It was then that Dr. Wahab informed Mr. and Mrs. Holmes that the mammograms taken by appellee could not detect cancer and that the only way to do so was to perform a biopsy. Until that time, both appellant and his wife believed that the mammograms detected cancer. When they learned otherwise, they began to wonder why appellee had never ordered a biopsy or suggested that one

be performed. Furthermore, upon learning that the lumps in her breast were malignant, Mrs. Holmes formed a belief that had appellee ordered a biopsy or suggested she receive one earlier, she may have been able to avoid the mastectomy and chemotherapy. In his deposition, appellant stated:

We believed that the mammograms were the way to tell whether or not it was cancerous, but Doctor Wahab indicated that, to the best of my memory, that a biopsy was the only—the best—the only way to really tell. And so then she—we wondered why the biopsy hadn't been ordered or hadn't been suggested up to the point to have it checked. (Deposition of David J. Holmes, August 14, 1990, at 29.)

She never had anymore contact with Doctor Lado following that last visit when he referred her to Doctor Wahab. She was very upset that we heard that a biopsy was the best, the foolproof way of—whether it was cancerous and we wondered why a biopsy hadn't been recommended or suggested sooner. Up to that point she liked Doctor Lado, she felt very comfortable with Doctor Lado and she trusted Doctor Lado. After hearing what Doctor Wahab said and having the surgery and she felt a little betrayed that maybe—she was very upset and felt that Doctor Wahab—or excuse me, I'm sorry, Doctor Lado should have at least suggested that and maybe if it would have been suggested, that would have been suggested sooner along with the mammogram maybe she could have prevented having her breast removed, maybe prevented having it found cancerous and having to go through the chemotherapy. (*Id.* at 30).

[W]e believed that after [the lump] was discovered in August of '85 that that was malignant, that it was—possibility existed it may have been malignant in April of '85 and that if a biopsy would have been performed, it may have indicated that rather than relying upon the mammograms. (*Id.* at 37).

As the deposition testimony indicates, in August, 1985, Mr. and Mrs. Holmes realized the injury to Mrs.

Holmes, Stage III breast cancer[3], the potential operative cause, appellee's alleged failure to order a biopsy or other diagnostic tests, and the relationship between the injury and the operative conduct. Accordingly, we find that there is no genuine issue of material fact as to when the limitations period on the survival action began. Thus, we affirm the lower court's order granting summary judgment on Count II of appellant's complaint.

Order affirmed.

3. Appellant contends that the injury to Mrs. Holmes was not the breast cancer but the metastasis, the spreading of the cancer to other parts of her body, which she did not learn of until 1986. We disagree. Appellant in his complaint alleges that appellee was negligent in failing to properly examine Mrs. Holmes regarding the mass in her breast and failing to order the diagnostic tests necessary to diagnose the mass as a malignant tumor. All of these alleged wrongful acts pertain to the initial cancer and not to the later metastasis.