**In re George C. HENDRICKSON, Jr. and Kathi A. Hendrickson, f/k/a Kathi A. Thomas, Debtors.**

**James R. Walsh, Esq., Trustee, Movant,**

v.

**George C. Hendrickson, Jr. and Kathi A. Hendrickson, f/k/a Kathi A. Thomas; and Continental Casualty Company, Respondents.**

**Bankruptcy No. 00–30036–BM. Motion No. 01–1945M.**

United States Bankruptcy Court, W.D. Pennsylvania.

Feb. 26, 2002.

---

James R. Walsh, Johnstown, PA, Chapter 7 Trustee.

Robert S. Shreve, Canonsburg, PA, for respondents/debtors.

### MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

The chapter 7 trustee has objected to an exemption debtor Kathi Hendrickson has claimed by reason of 11 U.S.C. § 522(d)(11)(B) in the proceeds of a settlement she had reached in a lawsuit for the "wrongful death" of her father and half-sisters. The chapter 7 trustee asserts that the requirements for taking such an exemption in accordance with § 522(d)(11)(B) are not satisfied.

Debtors have responded by bringing a "motion to dismiss" the chapter 7 trustee's objection. They assert that the claimed must be allowed because the objection of the chapter 7 trustee was not timely and because the proceeds of the settlement are excluded from the bankruptcy estate by virtue of § 541(c)(2) of the Bankruptcy Code.

We will deny debtors' "motion to dismiss" the chapter 7 trustee's objection to the claimed exemption and will sustain his objection.

### FACTS

Debtor Kathi Hendrickson, *nee* Kathi Thomas, was born on August 17, 1959. On July 20, 1979, approximately one month before her eighteenth birthday, her father, Allen Thomas, and her half-sisters, Sandra and Pamela Thomas, perished in a catastrophic flood in Johnstown, Pennsylvania, when a dam suddenly collapsed.

Debtor Kathi Hendrickson's parents had divorced before the deaths of her father and half-sisters. He had provided child support for debtor, who resided with her mother, until the time of his death. After his death, debtor applied for and received social security survivor's benefits until she no longer was eligible.

Debtor's half-sisters, who resided with someone other than debtor and her mother, were ten and twelve years of age, respectively, when they died and had not provided any support for debtor prior to their deaths.

At some undetermined time after July 20, 1977, debtor brought a lawsuit against various defendants in connection with the deaths of her father and half-sisters. Continental Casualty Company was the insurer of some of the defendants named in the lawsuit.

On July 20, 1989, twelve years to the day after the flood and less than a month before her thirtieth birthday, debtor Kathi Hendrickson and Continental Casualty arrived at a settlement of her lawsuit. Debtor executed the settlement agreement and release of claims "individually and as surviving child of Allan Thomas, deceased and as half-sister of Sandra Thomas and Pamela Thomas."

The settlement agreement provided in part as follows:

The proceeds of this claim settlement, all of which are intended as compensation for personal injury and pain and suffering, are to be paid as follows:

1. *Annual Payments.*—The Company will pay to Kathi Thomas the sum of One Hundred Seventy-five Thousand Five Hundred Eighty-eight and 60/100 Dollars ($175,588.60) to be paid in twenty (20) consecutive annual payments of Eight Thousand Seven Hundred Seventy-nine and 43/100 Dollars

($8,779.43) each, the first such annual payment to be made one (1) month after the date of this Agreement. . . .

The aforesaid annual payments shall not be subject to assignment, transfer, commutation or encumbrance.

Continental Casualty made the initial annual payment in the amount of $8,779.43 in August of 1989 and made succeeding annual payments in the same amount in August of each year thereafter until debtors filed their bankruptcy petition. Eleven annual payments totaling $96,573.73 were made prior to the filing. Nine annual payments totaling $79,014.87 remain. Continental Casualty withheld the annual payment due in August of 2001 due to the competing claims of the chapter 7 trustee and debtor Kathi Hendrickson. It has agreed to make the annual payment due in August of 2001 and all remaining annual payments to the proper person once the present dispute between the chapter 7 trustee and debtors is resolved.

Debtor Kathi Hendrickson and her husband, George G. Hendrickson, Jr., filed a voluntary joint chapter 7 petition on December 22, 2000. A chapter 7 trustee was appointed shortly thereafter.

The schedules accompanying the petition listed assets with a total declared value of $52,285.00 and liabilities totaling $78,164.23. In the place reserved for "Annuities" on Schedule B, Personal Property, debtors listed a "wrongful death lawsuit" belonging to debtor Kathi Hendrickson. Debtors claimed no exemption in this asset on original Schedule C, Property Claimed As Exempt.

The § 341 meeting of creditors took place on January 31, 2001. Approximately two weeks later, the chapter 7 trustee wrote to debtors' bankruptcy counsel at the time requesting a copy of the annuity and settlement agreement and a narrative concerning debtors' status at the time of

her father's death. In the event debtors believed the "wrongful death lawsuit" was exemptible and debtors intended to amend Schedule accordingly, the chapter 7 trustee further requested an explanation of the basis for the exemption.

On March 5, 2001, debtors' bankruptcy counsel at the time provided the chapter 7 trustee with information concerning debtor Kathi Hendrickson's status at the time of her father's death and remitted copies of the above settlement agreement and release of claims she had executed.

Three days later, on March 8, 2001, debtors filed with the court an amended Schedule C wherein they claimed an exemption in the amount of $8,700 in a "wrongful death lawsuit." The asserted basis for the exemption was § 522(d)(11)(B) of the Bankruptcy Code. The affidavit of service accompanying the filing asserted that the amendment had been served on the chapter 7 trustee by first class mail at his mailing address.

After receiving amended Schedule C, the chapter 7 trustee once again contacted debtors' bankruptcy counsel on or about March 15, 2001, requesting clarification of the amendment. The chapter 7 trustee inquired whether debtors intended to claim an exemption in the annual payments arising out of the above settlement agreement or in some other as yet undisclosed pending wrongful death lawsuit. If debtors intended the former, the chapter 7 trustee also wanted to know whether debtors intended to exempt only $8,700 of the remaining annual payments or the entire amount.

Debtors' bankruptcy counsel responded to the chapter 7 trustee's inquiry on March 20, 2001, or shortly thereafter. He advised that the exemption debtors had claimed pertained to the above annual settlement payments, not to some as yet undisclosed pending wrongful death lawsuit.

He also advised that debtors intended to exempt only one of the remaining annual payments, not all of them.

Debtors were granted a discharge from their pre-petition debts on April 6, 2001.

On April 17, 2001, more than thirty days since the filing of amended Schedule C but less than thirty days since debtors' bankruptcy counsel had clarified the amended exemption taken in a "wrongful death lawsuit", the chapter 7 trustee filed an objection to the claimed exemption. The chapter 7 trustee asserted that the exemption was improper because it did not satisfy the requirements of § 522(d)(11)(B) of the Bankruptcy Code. Debtors responded to the chapter 7 trustee's objection on May 20, 2001, and insisted that the exemption was proper under § 522(d)(11)(B).

The chapter 7 trustee brought a motion on July 10, 2001, requesting approval of a compromise he had reached with debtors. Under the compromise, the chapter 7 trustee was to receive all of the annual payments due in 2001 through 2004 and one-half of the payment due in 2005. Debtor Kathi Hendrickson would receive the remainder of the annual payments due after 2005. The motion was not approved because debtor Kathi Hendrickson experienced a change of heart. She was not willing to split future annual payments due under the settlement with her creditors but wanted instead to retain them for her own use alone.

After retaining new bankruptcy counsel, debtors filed a "motion for dismissal of the trustee's objection to exemption on January 10, 2002." They asserted that the chapter 7 trustee's objection to the amended exemption was untimely and therefore had to be "dismissed." On January 24, 2002, just one day prior to the scheduled hearing on the chapter 7 trustee's objection, debtors filed an "amended motion for

dismissal of trustee's objection to exemption." In addition to reiterating the timeliness issue, debtors asserted that the annuity payments were excluded from their bankruptcy estate by virtue of § 541(c)(2) of the Bankruptcy Code in light of language in the above settlement agreement which prohibited "assignment, transfer, commutation or encumbrance" of the annual payments.

Apparently believing that they would fare better under chapter 13 with respect to the above annuity payments, debtors have filed a motion on January 24, 2002, to convert their case from a chapter 7 proceeding to a chapter 13 proceeding. This matter has yet to be resolved and is pending at this time.

An evidentiary hearing on the chapter 7 trustee's objection to the exemption taken in the annuity payments was held on January 25, 2002, at which time both sides were given an opportunity to offer evidence on the issues presented by the objection. An evidentiary hearing on the motion to convert to chapter 13 and the chapter 7 trustee's response thereto is scheduled for March 7, 2002.

## DISCUSSION

### A.) Is The Trustee's Objection To The Amended Exemption Timely?

■ A debtor claiming property as exempt must file a list of such property with the court. Property claimed as exempt is exempt unless a party in interest objects. 11 U.S.C. § 522(i).

A party in interest intending to object to a claimed exemption must file an objection with the court within thirty days after the § 341 meeting is concluded or within thirty days after the filing of any amendment thereto, whichever is later. Federal Rule of Bankruptcy Procedure 4003(b). The deadline for filing an objection may be

extended for cause, but only if the objector files with the court a request for extension of the deadline before the deadline has passed. *Id.*

■ An exemption cannot be contested once the deadline has passed, without regard to whether debtor has a "colorable basis" for claiming it. *Taylor v. Freeland & Kronz,* 503 U.S. 638, 644, 112 S.Ct. 1644, 1648, 118 L.Ed.2d 280 (1992).

The amendment to Schedule C wherein debtors claim an exemption in a "wrongful death lawsuit" was filed with the court on March 8, 2001. The chapter 7 trustee did not file an objection to the amendment until forty days later on April 17, 2001. Relying on Federal Rule of Bankruptcy Procedure 4003(b) and *Freeland & Kronz,* debtors maintain that the chapter 7 trustee's objection must be "dismissed" as untimely and that the amended exemption must be allowed without regard to whether there is a "colorable basis" for it.

We disagree. Debtors' assertion that the chapter 7 trustee's objection *must* be "dismissed" because it is untimely is without merit in light of circumstances specific to this case.

■ The thirty-day period set forth at Federal Rule of Bankruptcy Procedure 4003(b) and strictly enforced in *Freeland & Kronz* begins to run in every instance on the day debtor files an amended claim of exemption. As is the case with garden-variety statutes of limitation, however, certain circumstances may toll the running of the thirty-day time period within which one may object to a claimed exemption.

■ Considering the relatively short time frame for objecting to a claimed exemption, "it is important that the trustee and creditors be able to determine precisely whether a listed asset is validly exempt simply by reading a debtor's schedules."

*Hyman v. Plotkin (In re Hyman)*, 967 F.2d 1316, 1319 n. 6 (9th Cir.1992). Because the schedules are controlled by the debtor, any ambiguity therein is construed against the debtor. *Id.* If a schedule is insufficient to put the trustee and creditors on notice as to the property a debtor claims as exempt, the period for objecting to the claimed exemption begins to run only upon actual notice to the trustee and to creditors concerning the property debtor seeks to exempt. *Preblich v. Battley (In re Preblich)*, 181 F.3d 1048, 1052 (9th Cir.1999); *Bank v. Schwartz (Matter of Schwartz)*, 185 B.R. 479, 483–84 (Bankr. D.N.J.1995); *Gilbert v. Zimmer (In re Zimmer)*, 154 B.R. 705, 709–10 (Bankr. S.D.Ohio 1993).

After initially characterizing the settlement proceeds of the lawsuit debtor Kathi Hendrickson had brought in connection with the deaths of her father and half-sisters as a "wrongful death lawsuit", debtor explained at the § 341 meeting that the asset in question consisted of the proceeds of the settlement of the lawsuit. On March 8, 2001, debtors amended Schedule C to claim an exemption in the amount of $8,700 in a "wrongful death lawsuit" in accordance with § 522(d)(11)(B) of the Bankruptcy Code.

Exercising an abundance of caution, the chapter 7 trustee promptly inquired of debtors' bankruptcy counsel within a few days of receiving amended Schedule C whether the phrase "wrongful death lawsuit" appearing therein referred to the above settlement proceeds or to an as yet undisclosed pending wrongful lawsuit. Within thirty days of receiving clarification from debtors' counsel that the phrase referred to the settlement proceeds disclosed at the § 341 meeting and not to something else, the chapter 7 trustee objected to amended Schedule C.

The chapter 7 trustee, in other words, did not know precisely what asset debtors sought to exempt due to what he perceived as an ambiguity concerning the reference of the phrase "wrongful death lawsuit." Although it could be argued that the chapter 7 trustee should have understood the phrase as referring to the settlement proceeds, we are not willing to so conclude on the facts before us.

The phrase reasonably could be understood as referring to an undisclosed pending lawsuit, not to the settlement proceeds arising out of the lawsuit for the alleged wrongful deaths of debtor Kathi Hendrickson's father and half-sisters. Because debtors' intent was not obvious, the phrase's lack of clarity persuades us that the chapter 7 trustee did not have actual notice of the above amendment to Schedule C until debtors' bankruptcy counsel provided clarification.

The thirty-day period for objecting to amended Schedule C, in other words, did not begin to run until the chapter 7 trustee received the clarification on or about March 20, 2001. As was noted previously, the chapter 7 trustee's objection to the amendment was filed within thirty days of this latter date and therefore was timely.

In our estimation, this conclusion is entirely consonant with Federal Rule of Bankruptcy Procedure 4003(b) and the holding in *Freeland & Kronz.* While Federal Rule of Bankruptcy Procedure 4003(b) establishes a deadline for objecting to a claimed exemption, it does not preclude the tolling of the time frame in certain situations. Neither does *Freeland & Kronz.* As we read the decision, *Freeland & Kronz* addresses the question whether the trustee may contest the validity of an exemption after the thirty-day period has expired even if the debtor has "no colorable basis for claiming the exemption." *Id.,* 503 U.S. at 639, 112 S.Ct. at 1646.

The question whether the running of the thirty-day deadline is tolled when a claimed exemption is ambiguous as to the identity of the property claimed as exempt was not before the Supreme Court.

In rejecting the argument of the trustee in *Freeland & Kronz,* the Supreme Court acknowledged that while "deadlines may lead to unwelcome results, ... they prompt parties to act and they produce finality." *Id.,* 503 U.S. at 644, 112 S.Ct. at 1648. The chapter 7 trustee in this case was not dilatory in objecting to debtors' amended Schedule C when he did. To the contrary, he acted promptly by requesting clarification of the phrase "wrongful death lawsuit" within days of receiving the amendment and by promptly objecting after receiving clarification so that finality could be attained. His conduct, in other words, was aimed at achieving the objectives behind the imposition of deadlines, not at subverting them.

**B.) Are Future Annuity Payments Excluded From The Bankruptcy Estate?**

■ An estate is created at the commencement of the case when a bankruptcy petition is filed. The estate includes all of the debtor's legal or equitable interests in property as of the filing. 11 U.S.C. § 541(a)(1).

■ Once it is exempted, an estate asset is withdrawn from the bankruptcy estate for the benefit of the debtor. *Owen v. Owen,* 500 U.S. 305, 308, 111 S.Ct. 1833, 1835, 114 L.Ed.2d 350 (1991). If the exemption stands, the interest in property generally is "immunized" under § 541(c)(2) of the Bankruptcy Code against liability for pre-bankruptcy debts. *Id.* An interest in property cannot be exempted, however, unless it initially is part of the bankruptcy estate. *Id.*

According to the settlement agreement dated July 20, 1989, the annual payments provided for thereunder "shall not be subject to assignment, transfer, commutation or encumbrance."

Such a restriction on an interest in property does not necessarily mean that the interest is not part of the bankruptcy estate. Section 541 of the Bankruptcy Code provides in relevant part as follows:

(c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection 541(a)(1) ... of this section notwithstanding any provision in an agreement ...—

(A) that restricts or conditions transfer of such interest by the debtor....

(2) A restriction on the transfer of the beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

11 U.S.C. § 541(c).

■ A restriction on the transfer of a debtor's interest in other words, prevents it from being included in the bankruptcy estate, in other words, only if the restriction pertains to a transfer of debtor's equitable interest in a trust which is enforceable under applicable non-bankruptcy law.

Debtors assert that the annual payments due under the above settlement agreement are excluded from the bankruptcy estate because of the above restrictions in the settlement placed upon its transfer. This assertion is without merit.

■ Whether a trust exists for purposes of § 541(c)(2) is determined by the law of the *situs* of the trust *res. Pineo v. Fulton (In re Fulton),* 240 B.R. 854, 862–63 (Bankr.W.D.Pa.1999). For a trust to exist under the law of Pennsylvania: (1) there must be a trustee, a *res* held in trust, and a beneficiary for whom it is held; (2)

the trustee must hold legal title but not equitable title to the *res;* and (3) the settlor must intend to create a trust. *Id.,* 240 B.R. at 863.

None of these requirements is present in this instance. There is no indication in the record that Continental Casualty (or anyone else) holds the annual settlement payments in trust for debtor Kathi Hendrickson. There also in nothing to indicate that a trustee holds legal but not equitable title to the annual payments. Finally, there is nothing to indicate that some settlor intended to create a trust. The settlement agreement of July 20, 1977, the only documentary evidence concerning the annual payments which debtor Kathi Hendrickson is to receive, indicates that Continental Casualty is a debtor of hers and that she is a creditor of it.

 Even if a trust is present here, debtors' assertion that it is excluded from the bankruptcy estate would fail for yet another reason. For a trust to be excluded from the bankruptcy estate under § 541(c)(2), any restriction on the transfer of debtor's equitable interest therein has to be "enforceable under applicable non-bankruptcy law."

 If there were a trust in this instance, it would appear that debtor Kathi Hendrickson was both the settlor and the beneficiary. In Pennsylvania one can neither establish a spendthrift trust for one's own benefit nor by any device exclude one's creditors while retaining the beneficial interest. *C.I.T. Corporation v. Flint,* 333 Pa. 350, 353, 5 A.2d 126, 127–28 (1939). It would violate public policy. *In re Mogridge's Estate,* 342 Pa. 308, 310, 20 A.2d 307, 308 (1941). A spendthrift clause barring a creditor from reaching the interest of the settlor-beneficiary is not enforceable under the law of Pennsylvania. *Morton v. Morton,* 394 Pa. 402, 404, 147 A.2d 150, 152 (1959). Such an alleged trust there-

fore does not fall within the scope of § 542(c)(2) and is not thereby excluded from the bankruptcy estate.

Debtors cite to four cases as support for the general proposition that the annual payments arising out of the above settlement agreement are not part of the bankruptcy estate. They cite to: *Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992); *Pineo v. Fulton, supra; Bohm v. Brewer (In re Brewer)* 154 B.R. 209 (Bankr.W.D.Pa.1993); and *Skiba v. Kelvington (In re Kelvington),* 146 B.R. 358 (Bankr.W.D.Pa.1992). Their reliance upon these cases is misplaced. Although each case refers to § 541(c)(2), none of them asserts the general proposition that an annuity necessarily is excluded from a debtor's bankruptcy estate.

We conclude in light of the foregoing that the interest of debtor Kathi Hendrickson in the above annual settlement payments is not excluded from the bankruptcy estate. Debtors' "amended motion to dismiss" the chapter 7 trustee's objection to the exemption taken in the above annual settlement payments must be denied. We will have to reach the merits of the chapter 7 trustee's objection to determine whether the exemption is allowable.

## C.) Are The Annual Payments Exemptible Under § 522(d)(11)(B)?

 The exemption in the annual payments debtors have claimed is predicated on 11 U.S.C. § 522(d)(11)(B), which provides in relevant part as follows:

(1) the following property may be exempted under subsection (b) of this section: . . .

(11) The debtor's right to receive . . .—

(B) a payment on account of the wrongful death of an individual of whom the debtor was a dependent, to the extent reasonably necessary for

the support of the debtor and any dependent of the debtor.

The language of this subsection unambiguously provides that debtor may take an exemption in the above annual payments only if: (1) her right to receive a payment is on account of the wrongful death of an individual; (2) she was a dependent of that individual; and (3) the payment is reasonably necessary for her support and for the support of her dependents.

■■■■■■ A claimed exemption is "presumptively valid." *Carter v. Anderson (In re Carter)*, 182 F.3d 1027, 1029 n. 3 (9th Cir.1999). The burden of production is a shifting one when there is an objection to a claimed exemption. The objector has the burden of proving that it is not properly taken. Federal Rule of Bankruptcy Procedure 4003(b). The objector initially must produce evidence rebutting the presumptive validity of the exemption. If such evidence is produced, the burden then shifts to the debtor to come forward with unequivocal evidence showing the propriety of the exemption. *Id.* The ultimate burden of persuasion, however, lies at all times with the objector. *Id.*[1]

The chapter 7 trustee asserts that the claimed exemption in the above annual settlement payments must be denied because the above-articulated requirements of § 522(d)(11)(B) are not satisfied in this instance. We therefore will have to determine whether all of these requirements are satisfied.

### i.) Are The Annual Payments On Account Of The Wrongful Death Of An Individual?

When speaking colloquially, one might conclude that debtor Kathi Hendrickson's right to receive the above annual payments undoubtedly arose on account of the wrongful—i.e., tortious—deaths of her father and half-sisters. They perished in a catastrophic flood when a dam collapsed. It remains to be determined, however, whether the term "wrongful death" as it appears in § 522(d)(11)(B) should be construed in such a colloquial manner or as a term of art with a different connotation in legal discourse.

Pennsylvania law differentiates two types of action arising out of someone's "wrongful death."

One such action type of action appears at 42 Pa.C.S.A. § 8301. In 1977 and 1989 it provided in relevant part as follows:

(a) General rule.—An action may be brought to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no action for damages was brought by the injured individual during his lifetime.

(b) Beneficiaries.—Except as provided in subsection (d), the right of action created by this subsection shall exist only for the benefit of the spouse, children or parents of the deceased.... The damages recovered shall be distributed to the beneficiaries in the proportion they would take in the case of intestacy and without liability to creditors of the deceased person under the statutes of this Commonwealth.

Under the law of Pennsylvania this type of action is referred to as a wrongful death action.

The other type of action is found at 42 Pa.C.S.A. § 8302. It has provided at all relevant times as follows:

---

**1.** These burdens are much the same as apply when there is an objection to a proof of claim, as articulated in *In re Allegheny International, Inc.*, 954 F.2d 167, 173–74 (3d Cir.1992).

All causes of action or proceedings, real or personal, shall survive the death of the plaintiff ... or the death of one or more joint plaintiffs....

This is referred to under Pennsylvania law as a survival action.

A wrongful death action brought pursuant to § 8301 is separate and distinct from a survival action arising under § 8302. *Holmes v. Lado,* 412 Pa.Super. 218, 223, 602 A.2d 1389, 1391, *allocatur denied,* 530 Pa. 660, 609 A.2d 168 (1992).

▇▇▇ Recovery in a wrongful action depends on the rights of action that the spouse, child or parent possess as beneficiaries of the deceased. *Holmes,* 412 Pa.Super. at 223 n. 2, 602 A.2d at 1391 n. 2. The purpose of a wrongful death action is to compensate them for the losses they have sustained as a result of the decedent's wrongful death. *Tulewicz v. Southeastern Pennsylvania Transportation Authority* 529 Pa. 588, 597, 606 A.2d 427, 431 (1992). It is not an action for damages sustained by the deceased. *Dennick v. Scheiwer,* 381 Pa. 200, 201, 113 A.2d 318, 319 (1955).

▇▇▇ If, on the other hand, a person is injured by the negligent act of another, a cause of action may accrue to the injured person. His or her death thereafter does not extinguish that cause of action. Pursuant to § 8302, the cause of action survives the death of the injured person and continues in their personal representative. *Baumgart v. Keene Building Products Corp.* 430 Pa.Super. 162, 167, 633 A.2d 1189, 1191 (1993), aff'd, 542 Pa. 194, 666 A.2d 238 (1995). In contrast to a wrongful death action, a survival action is not a new cause of action but is a continuation in the deceased's personal representative of the cause of action which accrued to the deceased under the common law. *Harvey v. Hassinger,* 315 Pa.Super. 97, 102, 461 A.2d

814, 817 (1983). The purpose of a survival action is to recover the loss to the decedent's estate resulting from the tort. *Tulewicz,* 529 Pa. at 597, 606 A.2d at 431.

The measure of damages in a wrongful death action and the measure of damages in a survival action are fundamentally different.

▇▇▇ In addition to special damages that are specified in § 8301, damages recoverable in a wrongful death action are measured by the pecuniary losses enumerated relatives of the deceased suffered on account of the loss of that portion of the decedent's earnings they would have received from the decedent had he or she continued to live. *Baumgart,* 430 Pa.Super. at 167, 633 A.2d at 1191.

▇▇▇ The recovery obtained in a survival action, by contrast, depends on the causes of action the decedent possessed at the time of death and, as in a personal injury action, amounts to the damages that decedent himself or herself sustained. *Holmes,* 412 Pa.Super. at 223 n. 2, 602 A.2d at 1391 n. 2. Damages in a survival action are measured by the pecuniary loss occasioned to the injured person by the negligent act which resulted in their death. *Id.* In addition to the loss of gross earning power from the date of injury until the time of death and the loss of earning power from the time of death through the decedent's estimated working life, the decedent's pain and suffering are recoverable in a survival action. *Kiser v. Schulte,* 538 Pa. 219, 226–27, 648 A.2d 1, 4 (1994).

Debtors did not offer into evidence the complaint in the lawsuit arising out of the deaths of debtor Kathi Hendrickson's father and half-sisters. We therefore have no way of determining whether recovery was sought under § 8301 or § 8302. The sole documentary evidence offered at trial pertaining to debtor's right to receive the

above payments for their deaths is the settlement agreement dated July 20, 1989. As was noted previously, it stated that the annual payments were "intended as compensation for personal injury and pain and suffering."

Considering the different types of damages that are recoverable in a wrongful death action and in a survival action, it appears that the proceeds of the settlement were meant as compensation for injuries sustained, not in a wrongful death action, but in a survival action.

By its express terms, the settlement agreement specifies that the compensation was intended for "personal injury." This strongly suggests that the injuries compensated for were those of the decedents, not those of the spouse, children or parents of the decedents.

Moreover, the settlement agreement states that the proceeds were intended to compensate "for pain and suffering." This reinforces the inference that the injuries compensated for were those sustained by the decedents, not by the spouse, children, or parents of the decedents. Our review of Pennsylvania law has uncovered no instance in which a plaintiff in a wrongful death action brought under § 8301 was entitled for recover for pain and suffering plaintiff allegedly suffered as a result of the injury of the decedent. The purpose of damages in a wrongful death action, we have noted, is to compensate certain surviving relatives of the decedent for the pecuniary losses they have suffered as a result of decedent's wrongful death. Pain and suffering are not a species of pecuniary loss.

We conclude in light of the foregoing that the annual payments to which debtor Kathi Hendrickson is entitled as a result of the above settlement agreement were not intended as compensation for the wrongful death of an individual in accordance with

§ 8301. Her right to receive the payments was instead intended as compensation for injuries suffered by decedents in accordance with § 8302.

We further conclude that her right to receive such payments under § 8302 does not qualify for purposes of § 522(d)(11)(B) as a right to payment "on account of the wrongful death of an individual." The first of the above-enumerated requirements for taking an exemption under § 522(d)(11)(B), in other words, is not satisfied. We so conclude for the following reasons.

Pennsylvania is not the only jurisdiction to distinguish between a wrongful death action and a survival action. Most, if not all of the states of the United States recognize the same distinction. Moreover, the distinction among them is a long-standing one that antedates the enactment of § 522(d)(11)(B).

It is presumed when Congress enacts legislation that Congress knows and understands existing law. *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32, 111 S.Ct. 317, 325, 112 L.Ed.2d 275 (1990) (*citing Cannon v. University of Chicago*, 441 U.S. 677, 696–97, 99 S.Ct. 1946, 1957–58, 60 L.Ed.2d 560 (1979)). We have seen that, when it is used in legal discourse the term "wrongful death" is a term of art with a specific legal meaning and an extensive history. When it employs a term of art with an extensive legal history, unless there is clear indication to the contrary, Congress is presumed to have adopted the cluster of concepts attached to the term of art along with its special meaning. *Morissette v. United States*, 342 U.S. 246, 263, 72 S.Ct. 240, 250, 96 L.Ed. 288 (1952). The absence of such contrary indication implies satisfaction with the term of art rather than a departure from it. *Id.*

In short, we conclude that debtor Kathi Hendrickson's right to receive annual payments arising out of the above settlement agreement was **not** "on account of the wrongful death of an individual" for purposes of § 522(d)(11)(B). The chapter 7 trustee's objection to debtors' amended Schedule C therefore must be sustained.

The matter does end there. As we shall see, the chapter 7 trustee's objection would have to be sustained even if the amended exemption satisfied this first requirement.

### ii.) Was Debtor Kathi Hendrickson A Dependent Of The Deceased Individuals?

We previously noted that the second requirement for the taking of an exemption in accordance with § 522(d)(11)(B) is that the person claiming the exemption was a "dependent" of the deceased individual.

Although 11 U.S.C. § 522(a)(1) provides that, for purposes of § 522 of the Bankruptcy Code, the term "dependent" includes a spouse, whether or not they are "actually dependent", the term is not defined anywhere in the Bankruptcy Code.

Debtor Kathi Hendrickson's mother and father had divorced at some unspecified time prior to July 20, 1977, when the deluge that claimed the lives of her father and half-sisters occurred. Although they shared the same biological father, debtor Kathi Hendrickson and her half-sisters had different biological mothers. Debtor resided with her mother at that time while her half-sisters resided elsewhere with someone else. Debtor's half-sisters were considerably younger than debtor. Debtor was only one month shy of her eighteenth birthday in July of 1977 whereas her half-sisters were only ten and twelve years of age at the time. Debtor's half-sisters had no income of their own, had never contributed anything towards debtor's support,

and when they died undoubtedly had no obligation to provide such support. We can safely infer in light of these circumstances that debtor Kathi Hendrickson was never a "dependent" of her half-sisters for purposes of § 522(d)(11)(B).

The answer to the question whether debtor Kathi Hendrickson was a dependent of her father for purposes of § 522(d)(11)(B) is considerably less obvious and far more difficult to determine.

Debtor Kathi Hendrickson undoubtedly was a dependent of her father when he died in July of 1977. Although her parents previously had divorced and debtor resided with her mother while her father resided elsewhere, debtor's father was still providing for debtor's support up to the time of his death, presumably because he had a legal obligation to do so until debtor's eighteenth birthday. After his death, debtor applied for and received social security benefits covering the one-month period between the time of his death and her eighteenth birthday.

The issue that we have to resolve, however, is whether debtor Kathi Hendrickson, who was nearly twenty-nine years old at the time of the settlement agreement and was forty-one years old when she and her husband filed a bankruptcy petition, qualifies for purposes of § 522(d)(11)(B) as a "dependent" of her father with respect to the annual payments she is slated to receive post-petition. Debtor, we previously noted, received eleven annual payments prior to December 22, 2001, with nine additional annual payments due thereafter. We conclude that she does **not** so qualify.

Subsection 522(d)(11)(C) of the Bankruptcy Code (11 U.S.C. § 522(d)(11)(C)) provides as follows:

(d) The following property may be exempted under subsection (b)(1) of the section: . . .

(11) The debtor's right to receive . . .—

(C) a payment under a life insurance contract that insured the life of an individual of whom the debtor was a dependent on the date of such individual's death, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.

The language of § 522(d)(11)(B) differs in a critical respect from the language employed in § 522(d)(11)(C). The latter permits an exemption of a debtor's right to receive a payment under a life insurance contract that insured the life of an individual of whom the debtor was a dependent "on the date of such individual's death." The former provision does not contain the phrase "on the date of such individual's death" to modify the term "dependent."

■ Our task when interpreting a federal statute is to construe what Congress has enacted and must begin with the language of the statute. *Duncan v. Walker*, 533 U.S. 167, 171–173, 121 S.Ct. 2120, 2124, 150 L.Ed.2d 251 (2001). If the language is plain and unambiguous, our sole function is to enforce it according to its terms, provided that the disposition dictated by the text is not absurd. *Hartford Underwriters Insurance Co. v. Union Planters Bank*, 530 U.S. 1, 5, 120 S.Ct. 1942, 1947, 147 L.Ed.2d 1 (2000). "Judicial analysis is complete" if the language alone provides a clear answer as to its meaning. *Connecticut National Bank v. Germain*, 503 U.S. 249, 254, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992).

The language of § 522(d)(11)(B) is ambiguous—i.e., is amenable to more than plausible construal—concerning the time when one must be a dependent of an individual to qualify for the exemption provided for therein. Must one be a dependent of the individual as of the time one is entitled to receive a payment on account of the individual's wrongful death or, as is the

case for § 522(d)(11)(C), must one be a dependent of that individual as of the date of the individual's death? Either construal of the language of § 522(d)(11)(B) is plausible.

■ According to the canon of statutory construction *"expressio unius est exclusio alterius"*, where Congress includes particular language in one section of a statute and omits it in another section of the same statute, "it is generally presumed that Congress acts intentionally and purposely [sic] in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 24, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983).

Applying this canon of construction to § 522(d)(11)(B), we conclude that the relevant time when one must be a dependent of a deceased individual is **not** the time of the individual's death but is some other time. Had Congress intended for this to be the relevant time it presumably would have so provided, as it unquestionably did in § 522(d)(11)(C). It did not, however, do so. Inclusion of the phrase "on the date of such individual's death" in § 522(d)(11)(C) and its exclusion from § 522(d)(11)(B) indicates that Congress intended this exclusion. *Expressio unius est exclusio alterius.* The relevant time when one must be a dependent of an individual for purposes of § 522(d)(11)(B) is not when the individual died.

Elimination of this possibility leaves two obvious alternatives. One must be a dependent of the deceased either *before* the individual's death or *after* their death.

We conclude that the first of these alternatives is not applicable because it is too broad and all-encompassing. Even a debtor who once was a dependent of an individual before the individual's death but had not been their dependent for any period of time prior to the individual's death would

qualify under this alternative. Nothing in the language or structure would appear to prevent this unlikely scenario if we were to adopt the first alternative. Congress, we submit, intended no such windfall for a debtor in bankruptcy when it enacted § 522(d)(11)(B). Such a construal, in other words, would lead in certain instances to a patently absurd result and consequently must be rejected. *Union Planters Bank*, 530 U.S. at 6, 120 S.Ct. at 1947.

■ The relevant time when one must be a dependent to qualify under § 522(d)(11)(B), we conclude, is after the individual's death. In contrast to the previous alternative, the language of § 522(d)(11)(B) indicates at what specific point in time subsequent to an individual's death one must be a dependent to qualify for this exemption.

■ The phrase "a payment", as opposed to "payment", indicates that one must look to a debtor's right to receive a *particular* payment and determine whether the debtor would have been a dependent of the deceased *at that time* had the deceased not died. In other words, an exemption is properly taken under § 522(d)(11)(B) only if the debtor would have been a dependent of the deceased individual when the right to receive a particular payment arises.

Under this construal, a debtor might qualify for purposes of § 522(d)(11)(B) with respect to some payments but not with respect to others. The potential windfall to a debtor that could occur under the alternative construal would not occur under this construal.

As we understand the above settlement agreement, debtor Kathi Hendrickson's right to receive a particular payment arises in August of each of twenty successive years beginning in August of 1989. She would not have been a dependent of her father had he not died when her right to receive "a payment" on account of his death arose in August of 2001. By then debtor was forty-one years old and married.

We conclude from the foregoing that the exemption debtor Kathi Hendrickson has taken with respect to any remaining payment to which she will be entitled after the filing of the bankruptcy petition does **not** satisfy the second of the above-enumerated requirements of § 522(d)(11)(B).

In light of the determination that the exemption debtor Kathi Hendrickson has taken pursuant to § 522(d)(11)(B) fails to satisfy the first and second requirements for taking such an exemption, it will not be necessary to determine whether the third requirement—i.e., that a payment is reasonably necessary for the support of debtor and her dependents—is satisfied. The question and the answer thereto are of no consequence. Exemption of any payment to which debtor is entitled on account of the death of her father is improper in this instance even if the payment is necessary in this regard. Allowing debtor Kathi Hendrickson to exempt these payments would provide her with an unintended windfall and would wrongly deprive her creditors of access to funds which could be utilized to satisfy, at least in part, the lawful pre-petition debts owed to them by debtor Kathi Hendrickson.

The chapter 7 trustee's objection to the claimed exemption must be sustained.