773 A.2d 758

**Robert ZIEBER and Sabine Kelischek, M.D., H/W,**

v.

**Arthur BOGERT, D.O. and T. Bear G.P. Ltd, T/A Roxborough Family Practice.**

**Appeal of Arthur Bogert, D.O.**

Supreme Court of Pennsylvania.

Argued Jan. 29, 2001.

Decided June 19, 2001.

Kim Kocher, Allan H. Starr, Philadelphia, for Arthur Bogert.

Edward L. Currier, for T. Bear G.P. Ltd. Trading as Roxborough Family Practice.

Andrew J. Stern, Philadelphia, for Robert Zieber and Sabine Kalischek, M.D.

Michael J. Foley, Scranton, for Pennsylvania Trial Lawyers Association.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and SAYLOR, JJ.

### OPINION

ZAPPALA, Justice.

This appeal presents the issue of whether a plaintiff in a medical malpractice action may introduce, as an element of damages, evidence regarding his increased risk of recurrence of cancer. The Superior Court held that evidence of the future effects of a disease already contracted, such as the probability of metastasis of cancer, is a proper consideration for the jury when awarding damages. For the reasons that follow, we affirm.

On June 6, 1992, Robert Zieber experienced severe abdominal pain. His wife, a resident in obstetrics and gynecology, felt what appeared to be a four-centimeter mass in his lower abdomen. Zieber went to the emergency room of Roxborough Memorial Hospital and was examined by Dr. J. Norris Childs. Dr. Childs felt the mass in Zieber's stomach and ordered

blood drawn. He later contacted Zieber's primary care physician, Dr. Arthur Bogert, and recommended that he order a C–T scan with intravenous ("IV") contrast, a barium enema and an upper G.I. study.

After examining Zieber on June 11, 1992, Dr. Bogert preliminarily diagnosed him with irritable bowel syndrome. Dr. Bogert ordered the barium enema and the upper G.I. that Dr. Childs had recommended, but did not order the C–T scan. Dr. Bogert later informed Zieber that the studies had confirmed his prior diagnosis of irritable bowel syndrome and that his condition could be managed by adjustments to his diet. Dr. Bogert instructed Zieber to return to his office if severe abdominal pain recurred.

In March of 1993, Zieber experienced flu-like symptoms, including abdominal pain and headache. Due to a switch in health insurance plans, Zieber went to see Dr. Joan Lit, a participating provider of his new plan. Dr. Lit felt the mass in Zieber's lower abdomen and ultimately ordered a C–T scan with IV contrast. The scan revealed a large soft tissue mass, suggesting a lymphoma of the small bowel and numerous enlarged lymph nodes. Exploratory surgery confirmed that Zieber had a large cell lymphoma. The surgery also revealed two masses in his abdomen, one measuring eleven centimeters and the other measuring six centimeters. The larger tumor had invaded the bowel and created an obstruction. Zieber underwent surgical removal of the two masses as well as large sections of his colon and small and large intestines. Aggressive chemotherapy followed, which caused life-threatening side effects. Zieber was thereafter placed on a more conventional regimen and later achieved remission of the disease.

On May 8, 1995, Zieber and his wife (Appellees) filed the instant medical malpractice action against Dr. Bogert and T. Bear G.P. Ltd., d/b/a Roxborough Family Practice (Appellants). They sought damages for the past and present injuries associated with the late diagnosis of the lymphoma as well as damages for Zieber's increased risk of recurrence of cancer in

the future.[1]   Appellees presented the testimony of Dr. Raymond Weiss, who stated that there is a 35% to 50% chance that a patient in complete remission will suffer a relapse within five years after the completion of chemotherapy.   Dr. Weiss explained that a patient achieves complete remission when a C–T scan reveals no cancer, although microscopic cancer cells may remain in the patient's body at that time. Zieber testified as to his fear and mental anguish arising from this increased risk.   Additionally, the trial court instructed the jury that this was Appellees' "one day in court," and therefore the jury should consider what Zieber's harm might be in the future as a result of what transpired in this case.

At the conclusion of trial, the jury returned a verdict in favor of Appellees, awarding $800,000 to Zieber and $200,000 to his wife on her loss of consortium claim.   On appeal, the Superior Court vacated the order of the trial court and remanded for a new trial.   It held that the trial court erred in failing to charge the jury on comparative negligence after Dr. Bogert had testified that Zieber refused to undergo the C–T scan.[2]   The court, however, upheld the trial court's ruling that evidence of the risk of recurrence of cancer may be considered as part of the jury's assessment of damages. The court distinguished cases precluding recovery for the fear of and/or increased risk of contracting a disease on the ground that Zieber already had an invasive and aggressive form of cancer.

As noted, we granted allocatur to determine the propriety of this evidentiary ruling.[3]   Appellants argue that the Superior Court erroneously relied on *Gradel v. Inouye,* 491 Pa. 534, 421 A.2d 674 (1980), for the proposition that evidence of the recurrence of cancer may be considered by the

1.   The trial court denied Appellants' motion *in limine* to preclude expert testimony as to Zieber's increased risk of relapse and death.

2.   Appellees filed petitions for allowance of appeal from this portion of the Superior Court's order, which were denied by this Court on August 31, 2000.   *Zieber v. Bogert,* 771 A.2d 1287, 2000 Pa. LEXIS 2173.

3.   Generally, our standard of review of a trial court's evidentiary ruling is whether the trial court abused its discretion.   *Commonwealth v. Minerd,* 562 Pa. 46, 753 A.2d 225 (2000).   As the evidentiary ruling at issue turns on a question of law, however, our review is plenary. *Phillips v. A–Best Products Co.,* 542 Pa. 124, 665 A.2d 1167 (Pa.1995).

jury when awarding damages. They contend that this conclusion is inconsistent with our subsequent decision in *Simmons v. Pacor, Inc.*, 543 Pa. 664, 674 A.2d 232 (1996), where we rejected claims for increased risk and fear of cancer. Appellants maintain that there is no basis for drawing a distinction between the speculative nature of future damages for the occurrence of cancer versus the *recurrence* of cancer. They urge our Court to apply *Simmons* to bar Appellees' present "fear" and "risk" claims and allow Appellees to return to court if and when Zieber's disease recurs, when the damages can be more accurately assessed.

We decline Appellants' invitation to extend the rationale of *Simmons* to cases in which the plaintiff has already contracted cancer and the claims for fear and/or increased risk of recurrence of cancer arise from the metastasis of the disease.[4] The instant case is controlled by our decision in *Gradel*, where our Court spoke to this very issue.

In *Gradel*, the plaintiffs filed a medical malpractice action against an orthopedic surgeon who had failed to remove a growing soft-tissue tumor in a young boy's arm. Due to the delay in diagnosis, the tumor invaded the bone and the boy's arm was later amputated above the elbow. Our Court held that in awarding damages, it was proper for the jury to consider medical testimony concerning the boy's increased risk of recurrence of cancer. *Id.* at 680. We explained

> As we stated in *Boyle v. Pennsylvania Railroad Co.*, 403 Pa. 614, 618, 170 A.2d 865, 867 (1961), a doctor properly may be allowed to explain the possible future effects of an injury, and with less definiteness than is required of opinion testimony on causation. Consequently, it was not improper for the jury to consider the possibility of future metastasis in awarding damages.

*Id.* at 680.

Our decision in *Simmons* did not alter this established rule of law. *Simmons* was not a medical malpractice law suit, but

---

4. Metastasis has been defined as the spreading of malignant cells through the bloodstream to the other organs of the body. *Gradel* at 676 n. 2.

involved consolidated actions to recover damages for injuries caused by occupational exposure to asbestos. As an element of damages, the plaintiffs sought relief for increased risk and fear of cancer. Unlike the instant case, none of the plaintiffs had contracted mesothelioma or cancer at the time the suits were filed. Instead, they were all diagnosed with asbestos-related pleural thickening, which is the formation of calcified tissue on the membranes surrounding the lungs. Although the condition is detectable by x-ray, it did not cause any lung impairment. The issue for review was whether asymptomatic pleural thickening, i.e., a condition unaccompanied by disabling consequences or physical impairment, is a compensable injury.

We found that it was not a compensable injury giving rise to a cause of action. Our decision was based on the fact that there was no physical injury that necessitated the awarding of damages. Equally significant was the fact that, due to the two-disease rule originally set forth in *Marinari v. Asbestos Corporation, Ltd.,* 417 Pa.Super. 440, 612 A.2d 1021 (1992), the plaintiffs were not precluded from subsequently commencing an action for an asbestos related injury when symptoms develop and physiological impairment begins.

We explained that the "two-disease rule" in asbestos exposure cases permitted a plaintiff to commence separate causes of action for separate asbestos related diseases—one cause of action for a nonmalignant asbestos related disease which had become manifest and another cause of action for the subsequent development of a separate malignant disease such as lung cancer or mesothelioma. *Simmons* at 237. The rule was intended to remedy the inequities that arose in cases involving latent diseases that did not surface until years after the initial exposure. Prior to the adoption of the rule, the cause of action for asbestos exposure accrued at the time the first sign of asbestos-related disease was discovered, when the plaintiff might be unaware of the extent of the resulting harm. Based on the unique construct of these cases, we held that the diagnosis of asymptomatic pleural thickening had no statute of limitations ramifications regarding a claim alleging a nonmalignant physiological impairment.

In a similar vein, we held that because asymptomatic pleural thickening was not a sufficient physical injury, the resultant emotional distress damages were likewise not recoverable.[5] As additional support for our holding, we noted the speculative nature of the damages for fear of cancer. We stated

The awarding of such damages would lead to inequitable results since those who never contract cancer would obtain damages even though the disease never came into fruition. The actual compensation due to the plaintiff can be more accurately assessed when the disease has manifested.

*Id.* at 238.

Appellants contend that damages for increased risk and/or fear of *recurrence* of cancer are likewise speculative. As noted, however, this was not the foundation upon which *Simmons* rested. Rather, the decision was based on the lack of physical injury and the ability of the plaintiffs, pursuant to the two-disease rule, to file a second action if and when the symptoms arise. Neither of these conditions exist in the instant case. Our decision in *Simmons* expressly recognized that a plaintiff could seek damages for his mental anguish for fear and increased risk of cancer if and when the cancer develops. *Id.* at 678, 674 A.2d 232. Here, Zieber's cancer has developed and he has already suffered its debilitating effects. The requirement of a physical injury has therefore clearly been established. Moreover, Appellees may not commence a second action, if and when the cancer recurs, based upon the same alleged negligence of Dr. Bogert in failing to properly diagnose the condition.

This point is illustrated by the case of *Holmes v. Lado*, 412 Pa.Super. 218, 602 A.2d 1389 (1992), a malpractice action alleging a physician's negligence in failing to timely diagnose breast cancer. In March of 1982, Mrs. Holmes had consulted the defendant-physician concerning lumps in her right breast. Mammograms performed shortly thereafter and again in April of 1985 revealed no malignancy. In August of 1985, Mrs.

5. We noted that the parties had conceded that a jury may be precluded from awarding damages for an increased risk of cancer in light of *Marinari.*

Holmes was referred to another physician who ordered a biopsy, which revealed stage III breast carcinoma. Mrs. Holmes underwent a mastectomy and received chemotherapy. In November of 1986, a CAT scan revealed metastasis of the cancer to the right frontal and temporal lobes of the brain. Radiation and chemotherapy were unsuccessful and Mrs. Holmes died on March 28, 1987, from metastatic breast carcinoma.

Mr. Holmes filed a survival action in November of 1988. The trial court granted the physician's motion for summary judgment on the ground that the action was barred by the applicable two-year statute of limitations. The Superior Court affirmed, finding that the statute of limitations began to run in August of 1985, when the decedent was informed that a mammogram could not detect cancer and that the only way to do so was to perform a biopsy.

Significant to the instant case, the Superior Court rejected Mr. Holmes's argument that the metastasis, which had been diagnosed within the statute of limitations period, was a new injury for which a separate cause of action could be brought. The court held that the alleged failure to order the diagnostic tests necessary to diagnose the mass as a malignant tumor pertained to the initial cancer and not to the later metastasis.

The logic of allowing one cause of action is sound, considering that the action is based upon the single event of medical negligence. If we were to reject *Holmes,* as Appellants suggest, a new cause of action purportedly could accrue every time cancer cells lay dormant in the body and subsequently spread to a different organ. Such a rule could conceivably create several causes of action for a misdiagnosed cancer patient where previously there was one. Simply put, the reasons justifying the creation of the separate disease rule are not applicable here, where the plaintiff has already contracted cancer and seeks damages for increased risk of recurrence of the disease.[6]

6. We likewise reject Appellants' contention that the two-disease rule has been adopted without restriction in medical malpractice cases. Although the lower courts have applied the rationale of *Simmons* in cases

In addressing an issue nearly identical to the issue presented in this case, the Circuit Court of Appeals of the First District of Florida noted the following

> With asbestos exposure, many victims never actually have cancer. Thus, the question in the asbestos case is whether cancer will ever develop in the first place as the ultimate result of an exposure. [The plaintiff], on the other hand has had cancer. . . . In truth, if [the plaintiff] develops symptoms of cancer in the future, this will not mean that the disease has recurred but, rather that the disease was never completely eradicated by what they contend was delayed treatment.

*Swain v. Curry*, 595 So.2d 168, 172 (Fl.Dist.Ct.App.1992).[7]

In summary, we hold that evidence of the increased risk and/or fear of recurrence of cancer is admissible for the purpose of establishing damages in a medical malpractice case alleging a physician's negligence in failing to properly diagnose the disease. Appellants' concerns regarding the speculative nature of such damages can be presented to the jury

involving a physician's negligence, the claims for increased risk or fear of a disease did not arise from the metastasis or recurrence of a disease already contracted. *See Lubowitz v. Albert Einstein Medical Center*, 424 Pa.Super. 468, 623 A.2d 3 (1993) (asymptomatic plaintiff can not recover monetary damages for a risk or fear of developing AIDS in the future); *Vazquez v. Friedberg*, 431 Pa.Super. 523, 637 A.2d 300 (1994) (where no functional impairment at time of physician's negligent act, injury did not occur until plaintiff contracted cancer); *Klein v. Weisberg*, 694 A.2d 644 (Pa.Super.1997) (no recovery for increased risk of cancer when plaintiff developed hemochromatosis and cirrhosis of the liver).

7. In *Swain*, the plaintiff filed a medical malpractice action, alleging the negligence of a physician in failing to properly diagnose her breast cancer. The physician relied on Florida case law providing that a plaintiff exposed to asbestos may not recover for increased risk of cancer until the patient contracts cancer. He argued that the plaintiff's claims for fear and increased risk of recurrence of cancer were premature, as there was no evidence of metastasis of the disease. The court rejected the physician's argument and distinguished toxic tort cases from those involving medical malpractice. The court held that the recovery sought for increased risk of cancer is not a cause of action in itself, but is an element of the damages incurred due to the physician's negligence.

386

during argument, as such challenges go to the weight, rather than the admissibility of the evidence.

Accordingly, the order of the Superior Court is affirmed.

Justice Newman did not participate in the consideration or decision of this case.