J-A11044-19

2020 PA Super 75

KENT GARMAN AND KELLY GARMAN : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellants :
:
:
:
v. :
:
:
:
RICHARD ANGINO, ESQUIRE AND : No. 1079 MDA 2018
ANGINO AND ROVNER :

Appeal from the Judgment Entered May 30, 2018
In the Court of Common Pleas of Dauphin County Civil Division at No(s):
2014-7513-CV

BEFORE:  BOWES, J., OLSON, J., and STABILE, J.

OPINION BY BOWES, J.:                **FILED: MARCH 30, 2020**

Kent and Kelly Garman appeal from the May 30, 2018 order granting summary judgment in favor of Appellees Richard Angino, Esquire, ("Angino") and the law firm of Angino and Rovner (the "Law Firm"), and dismissing their complaint in this legal malpractice action.  We conclude that the trial court erred in holding that *res judicata*, collateral estoppel, and the one recovery rule would have foreclosed the Garmans from recovering their verdict in the underlying medical malpractice action.  Hence, we vacate the judgment and remand for further proceedings.

The following facts are pertinent to our review.  Angino and the Law Firm represented the Garmans in two medical malpractice actions.  The first action ("**Garman I**") involved a claim for injuries sustained by Mrs. Garman when a sponge was left behind during her 1993 cesarean section ("C-section")

performed by Sohael Raschid, M.D. at Chambersburg Hospital. Following the surgery, Mrs. Garman experienced abdominal pain that her doctors attributed to a uterine fibroid. During a myomectomy on September 18, 1997, a surgical procedure to remove the fibroid, the sponge was discovered in her left lower abdomen. An abscess had formed around the sponge.

The Garmans, represented by Angino and the Law Firm, filed a medical malpractice action against Raschid and Chambersburg Hospital for their negligence in leaving behind the surgical sponge. A jury found in favor of the Garmans and awarded $521,588.68 in damages.

Mrs. Garman underwent another C-section on June 27, 1999. Again, she experienced abdominal pain after the surgery. A CT scan in 2006 revealed a retained foreign body in her abdomen. Mrs. Garman underwent surgery on May 23, 2006, to remove that foreign body, which was determined to be a second surgical sponge. The sponge was located in her right upper abdomen and it had adhered to her bowel. In order to remove it, surgeons had to perform a bowel resection.

On October 10, 2007, Angino and the Law Firm filed a complaint on behalf of the Garmans ("**Garman II**") against the physicians and hospital involved in the 1997 myometomy when the first sponge was removed, namely Dr. Heine, Raschid, and Chambersburg Hospital, and the parties involved in the 1999 C-section, Ellen Tourtelot, M.D. and the Milton S. Hershey Medical Center. They alleged that either the defendants negligently left the second

sponge during the 1997 or 1999 surgeries, or they were negligent in failing to timely discover and remove it. During the course of discovery, an expert retained by the Garmans opined that the source of the second retained sponge was the first surgery performed by Raschid in 1993. The Garmans sought permission to amend their complaint more than three years after the discovery of the second sponge to add allegations that the **Garman I** defendants Raschid and Chambersburg Hospital were negligent in leaving behind this second sponge. Despite an objection by these defendants that the amendment was barred by the statute of limitations, the trial court granted leave to amend.

**Garman II** proceeded to a jury trial on March 9, 2010. The jury returned a verdict in favor of the Garmans, and against Chambersburg Hospital and Raschid, allocating sixty-five percent of the negligence to the Hospital and thirty-five percent to Raschid. The jury found no negligence on the part of the other defendants. In addition, the jury determined that the Garmans "did not know [and] could not have known by the exercise of reasonable diligence prior to December 28, 2007, that the sponge removed from Mrs. Garman's body on May 23, 2006 was placed there during the 1993, 1997 or 1999 surgery." Verdict Slip, 3/17/10, at 1. The jury awarded damages of $735,000.

The trial court denied Raschid and Chambersburg Hospital's motion for judgment notwithstanding the verdict, and added delay damages to the

- 3 -

award.  Raschid and Chambersburg Hospital timely appealed to this Court arguing, *inter alia*, that claims related to the 1993 surgery were barred by the statute of limitations.[1]  We agreed, finding that the trial court erred in permitting the amended complaint, which added a new cause of action for negligence arising from the 1993 surgery, after the expiration of the statute of limitations.  Thus, we vacated the judgment and dismissed all claims related to the 1993 surgery, but affirmed the judgment with respect to the jury's findings of no negligence on the part of the other defendants with regard to the 1997 and 1999 surgeries.  **Garman v. Heine**, 32 A.3d 825 (Pa.Super. 2011) (unpublished memorandum at 13), *appeal granted*, 52 A.3d 223 (Pa. 2012), *dismissed as improvidently granted*, 65 A.3d 912 (Pa. 2013).

The Garmans initiated the instant legal malpractice action against Angino and the Law Firm.  They maintained that the negligence of Angino and the Law Firm in failing to timely seek amendment of the **Garman II** complaint to assert negligence claims against Raschid and Chambersburg Hospital for their negligence during the 1993 C-section resulted in the loss of their $700,000 verdict.  Following the close of the pleadings, Angino and the Law Firm moved for summary judgment based on the statute of limitations, *res judicata*, collateral estoppel, and the one satisfaction rule.  The trial court

---

[1] Since the statute of limitations was dispositive of the appeal in **Garman II**, this Court did not address the alternate bases for relief, *i.e.*, *res judicata*, collateral estoppel, and the one satisfaction rule.

denied the motion with regard to the statute of limitations, finding that "genuine issues of material fact exist with regard to the applicability of the equitable discovery rule." Order, 5/21/18, at 1. However, prior to trial, the trial court granted summary judgment in favor of Angino and the Law Firm based on the other three affirmative defenses. Trial Court Order, 5/30/18, at ¶12 (holding "[t]he one satisfaction rule and the doctrines of res judicata and collateral estoppel apply to render the judgment in Garman II uncollectible").

The Garmans timely appealed, complied with the trial court's Pa.R.A.P 1925(b) order, and the trial court issued its opinion in response. The Garmans present four issues for our review, which we have re-ordered for ease of disposition:

1. Did the trial court below err, as a matter of law, in entering summary judgment in favor of [Angino and the Law Firm] on the application of [the one satisfaction rule, collateral estoppel, and *res judicata*], (the "Three Affirmative Defenses") when the record was insufficient to justify judgment in their favor?

2. In entering summary judgment in favor of [Angino and the Law Firm], did the trial court below err, as a matter of law, by making factual assumptions and/or drawing inferences in favor of [Angino and the Law Firm], construing the record in the light most favorable to them, in violation of the standard of review?

3. Was the trial court's application of the [Three Affirmative Defenses] to determine that in this legal malpractice case [the Garmans] could not have won their underlying case, when these Three Affirmative Defenses had already been specifically and finally rejected by the trial and appellate courts in the underlying case, precluded by the doctrines of collateral attack and/or the coordinate jurisdiction rule?

4. Was the trial court's application of the Three Affirmative Defenses to the facts of the underlying case, when the Three

Affirmative Defenses had already been specifically and finally rejected by the courts in that case, precluded by the doctrines of collateral estoppel and/or judicial estoppel?

Appellants' brief at 5-6.

Our scope of review of a trial court's order granting summary judgment is plenary. *Kowalski v. TOA PA V, L.P.*, 206 A.3d 1148, 1156 (Pa.Super. 2019). Furthermore,

> [w]e view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. . . . [O]ur standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Id*. (quoting *Abrams v. Pneumo Abex Corp.*, 981 A.2d 198, 203 (Pa. 2009)).

The issue herein involves the viability of a legal malpractice action. As our Supreme Court recognized in *Kituskie v. Corbman*, 714 A.2d 1027, 1030 (Pa. 1998), "a legal malpractice action is distinctly different from any other type of lawsuit . . . because . . . a plaintiff must prove a case within a case since he must initially establish by a preponderance of the evidence that he would have recovered a judgment in the underlying action[.]" Only then is the plaintiff permitted to prove that the attorney was negligent in the handling of the underlying case, and that his negligence was the proximate cause of the plaintiff's loss. *Id*. However, as we explained in *Heldring v. Lundy*

- 6 -

***Beldecos & Milby, P.C.***, 151 A.3d 634, 644-45 (Pa.Super. 2016), "[a] legal malpractice action does not litigate the same cause of action as the underlying case in which the malpractice allegedly occurred" as the parties and the issues are different.

The instant case is unusual among legal malpractice actions as the underlying medical negligence case was fully litigated, and the Garmans prevailed at trial. The judgment was vacated on appeal because the amendment to the complaint to add claims related to the 1993 surgery was subsequently determined to have been untimely. This Court concluded that, despite the jury verdict, recovery was barred by the statute of limitations.

In their defense to claims of legal malpractice, Angino and the Law Firm contend that any negligence on their part in failing to timely seek amendment of the **Garman II** complaint was not the proximate cause of the Garmans' loss. They argued below, and again on appeal, that the doctrines of *res judicata*, collateral estoppel, and the one satisfaction rule also precluded the Garmans' recovery on the facts herein. The trial court agreed, and granted summary judgment in favor of Angino and the Law Firm.

In concluding that *res judicata* precluded recovery herein, the trial court found

> In both Garman I and II, the issues were the same in that [the Garmans' asserted negligence by the nursing staff at the hospital and the vicarious liability of Dr. Raschid for failure to make an accurate sponge count and the associated damages arising from the October 18, 1993 C-section surgery. The causes of action

against both defendants were identical and individual parties were in the same capacity in both cases, [*i.e.*,] doctor and patient.

Trial Court Order, 5/30/18, at ¶9. It reached a similar conclusion as to the doctrine of collateral estoppel.

Collateral estoppel applies in this matter as the issue decided in the prior action (Garman I), *i.e.*, the negligence by the nursing staff at the hospital and the vicarious liability of Dr. Raschid for failure to make an accurate sponge count and the associated damages arising from the October 18, 1993 C-section, was identical to the one presented in the later action (Garman II). A final judgment on the merits in Garman I was satisfied and the Garman[s] had a full and fair opportunity to litigate the issue in question in the prior action[,] which led to a jury verdict in their favor. Accordingly, collateral estoppel applies thereby barring the legal malpractice action for failure to establish that the underlying case was meritorious.

Trial Court Order, 5/30/18, at ¶10.

The substance of the Garmans' first two issues is that **Garman I** and **Garman II** were not identical. They contend that the parties were not the same, the facts were different, and the injuries and damages were separate and distinct. In arriving at the conclusion that *res judicata* and collateral estoppel rendered any verdict in **Garman II** uncollectible, the Garmans contend that the trial court failed to view the evidence in their favor as the non-moving party, together with reasonable inferences therefrom, in derogation of the summary judgment standard. Moreover, they maintain that the record was insufficient to warrant the entry of summary judgment in favor of Angino and the Law Firm. We agree that, as a matter of law, the three defenses did not preclude recovery in **Garman II**.

- 8 -

*Res judicata* means "a matter adjudged or a thing judicially acted upon or decided." ***McCarthy v. Township of McCandless***, 300 A.2d 815, 819 (Pa.Cmwlth. 1973). "Traditionally, American courts have used the term *res judicata* to indicate claim preclusion, *i.e.*, the rule that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and constitutes for them an absolute bar to a subsequent action involving the same claim, demand or cause of action." ***McNeil v. Owens-Corning Fiberglass Corp.***, 680 A.2d 1145, 1147-48 (Pa. 1996); ***see also Mariner Chestnut Partners, L.P. v. Lenfest***, 152 A.3d 265, 286 (Pa.Super. 2016) (holding that under the doctrine of *res judicata*, "a final judgment on the merits by a court of competent jurisdiction will bar any future action on the same cause of action between the parties and their privies"). It is an estoppel doctrine that is designed to prevent the same parties from engaging in vexatious and harassing litigation by preventing re-litigation of all grounds for recovery or defenses that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.

Our High Court has stated that *res judicata* precludes an action where the former and latter suits possess the following common elements: (1) identity of issues; (2) identity in the cause of action; (3) identity of persons and parties to the action; and (4) identity of the capacity of the parties suing or being sued. ***See In the Matter of Iulo***, 766 A.2d 335, 337 (Pa. 2001).

In making such a determination, "a court may consider whether the factual allegations of both actions are the same, whether the same evidence is necessary to prove each action and whether both actions seek compensation for the same damages." *Dempsey v. Cessna Aircraft Co.*, 653 A.2d 679, 681 (Pa.Super. 1995) (*en banc*) (internal citations omitted).

In the situation before us, the same type of negligent conduct on the part of Raschid and Chambersburg Hospital in 1993 caused two distinct injuries: one discovered in 1997, and the other discovered in 2006. **Garman I** was a cause of action in negligence for injuries resulting from the failure to remove one sponge during the 1993 C-section surgery, later discovered in Mrs. Garman's lower left abdomen in 1997. The damages sought related solely to the one sponge, which had formed an abscess at that location.

The facts pled in **Garman I**, viewed in the light most favorable to the non-moving party herein, support our view of that cause of action. Mrs. Garman averred that, in 1993, she underwent a C-section performed by Raschid at Chambersburg Hospital. Angino's Motion for Summary Judgment Exhibit I (**Garman I** Complaint, at ¶6). Thereafter, her uterus remained enlarged, and an ultrasound confirmed a mass on the left side of the pelvis. *Id*. at ¶¶7, 8. She was diagnosed on November 14, 1994, with uterine fibroids and an enlarged uterus. *Id*. at ¶9. A 1996 ultrasound showed further enlargement of the uterus, and Mrs. Garman underwent Depo-Lupron therapy in an attempt to reduce the size of the fibroids. *Id*. at ¶¶18, 20. While the

uterus decreased in size slightly, the mass grew. *Id*. at ¶23. Mrs. Garman pled that she underwent surgery recommended by Raschid for removal of the fibroid, or if that was not possible, a hysterectomy. *Id*. at ¶¶24, 26. The surgery, performed by Laurice Heine, M.D., at Chambersburg Hospital, revealed that the "fibroid" was a surgical sponge that could only have been left behind during the 1993 C-section. The retained sponge had formed an abscess in the lower left quadrant of Mrs. Garman's abdomen. *Id*. at ¶27.

Mrs. Garman alleged that Raschid was negligent in several respects: failing to assure that all surgical materials were removed *in toto*; failing to ensure accurate sponge counts; and failing to recognize that **a** sponge had been left behind in her abdomen during the surgery he performed. *Id*. at ¶30 (a-c) (emphasis added). Due to that negligence, Mrs. Garman underwent a second surgery to remove the sponge and surrounding abscess, sustained past and future pain and suffering, lost earnings, medical expenses, as well as permanent scarring and disfigurement. *Id*. at ¶¶31-36.

Thus, in **Garman I**, the damages sought were those caused by Raschid and Chambersburg Hospital's negligence in leaving behind one surgical sponge during the 1993 C-section. The jury returned a verdict against both defendants, and the judgment was satisfied.

In contrast, **Garman II** was initially commenced against Dr. Laurice Heine, Raschid, Chambersburg Hospital, the Hershey Medical Center, Summit Health, and Dr. Ellen Tourtelot for damages alleged to have resulted from their

negligence in leaving behind a second surgical sponge in 1997 or 1999, and only discovered in 2006. Alternatively, the Garmans pled that these defendants were negligent in failing to discover the sponge and remove it earlier. The following facts were averred. In 1997, Dr. Heine, assisted by Raschid, performed an exploratory surgery laparotomy to remove a mass thought to be a uterine fibroid. *See* Angino's Motion for Summary Judgment Exhibit C (**Garman II** Complaint at ¶¶17-19). The mass was determined to be a surgical sponge left behind during her 1993 C-section performed by Raschid. *Id*. at ¶20. The sponge discovered in 2006 was left behind during this 1997 surgery performed by Drs. Heine and Raschid. *Id*. at ¶¶48-50. Alternatively, if the source of the sponge was the earlier 1993 surgery, Drs. Heine and Raschid were negligent in failing to use X-ray in 1997 to ensure that there were no other foreign bodies remaining from the 1993 surgery. *Id*. at ¶¶48-54.

The **Garman II** complaint continued that, in June 1999, Mrs. Garman underwent a C-section performed by Dr. Tourtelot at the Hershey Medical Center. *Id*. at ¶¶26-27. Either the sponge discovered in 2006 was left behind during that 1999 C-section, or if earlier, Dr. Tourtelot negligently failed to discover its presence and remove it at that time. *Id*. at ¶¶67-68. Thereafter, Mrs. Garman experienced persistent abdominal pain. In May 2006, a CT scan revealed a retained foreign body located in the upper right quadrant of her abdomen. *Id*. at ¶36. Mrs. Garman underwent surgery to remove the foreign

body, which turned out to be a surgical sponge. *Id*. at ¶¶37, 42. The sponge had adhered to Mrs. Garman's bowel, and a bowel resection was necessary to remove it. *Id*. at ¶40.

At the time of **Garman II**, Mrs. Garman had undergone two additional abdominal surgeries since the 1993 C-section, either of which may have been the source of the second sponge. That fact alone made **Garman II** a very different case. It was alleged therein that the sponge was left behind either during the 1997 or 1999 surgeries. The complaint was subsequently amended, albeit too late, to add a new cause of action against Raschid and Chambersburg Hospital for their alleged negligence in leaving behind the second sponge during the 1993 surgery. At issue in **Garman II** was the identity of the party or parties responsible for negligently leaving behind the second surgical sponge, as well as the liability of subsequent health care providers for failing to detect it sooner.

The **Garman II** trial culminated in a $735,000 verdict in favor of the Garmans. Although Raschid and Chambersburg Hospital contested that the source of the second sponge was the 1993 C-section, the jury specifically found that to be the case. No liability was assessed against the defendants who subsequently treated Mrs. Garman for failing to discover it earlier. The jury found that the Garmans did not know, and could not have known with the exercise of reasonable diligence prior to December 28, 2007, whether the

second sponge was placed there during the 1993, 1997, or 1999 surgeries. Verdict Slip, 3/17/10, at 1.

Despite the obvious differences in the causes of action pled in **Garman I** and **II**, the trial court found that they were "the same causes of action." Order, 5/30/18, at ¶6. It found further that they arose "out of the same occurrence, facts and witnesses as the claims in Garman I[,]" and that the negligence was "fully litigated" in the earlier action. *Id*. Finally, the court concluded that in awarding future damages, the jury awarded "the same damages that the Garmans sought and recovered in Garman II." *Id*.

We conclude that **Garman I** and **II** were different causes of action for distinct negligence, injuries, and damages. Although the conduct determined to be negligent was similar in both cases, the acts were separate and the issues surrounding the negligence in each case were not the same. In **Garman I**, the cause of action was one in negligence solely against Raschid and Chambersburg Hospital for injuries sustained due to a retained sponge in the lower left quadrant of the abdomen, the surgery to remove it, and the pain and suffering associated with the abscess and its aftermath. In contrast, **Garman II** was a suit commenced against multiple medical defendants almost a decade later for damages associated with a surgical sponge discovered in 2006 in the right upper quadrant of Mrs. Garman's abdomen, the origin of which was at issue. The injuries resulting from the 2006 sponge were separate and distinct from the injuries caused by the first sponge, and

flowed from the second sponge's adherence to Mrs. Garman's bowel and the need to resect the bowel to remove it. The trial court in **Garman II** specifically limited damages to those caused by the second sponge. **See Garman II** Order, 7/21/10, at 6.

We find that the factual allegations in **Garman I** and **II** were not the same, different evidence was necessary to prove each case, and compensation was sought for separate and distinct injuries. Further undercutting the notion that the causes of action were identical is our determination in the prior appeal in **Garman II** that the amended complaint added a new cause of action against Raschid and Chambersburg Hospital for their negligence in leaving behind the second sponge during the 1993 surgery. **Garman v. Heine**, **supra** at 12 (unpublished memorandum). The discovery rule applied to that cause of action, and the statute of limitations in that action only began to run on May 23, 2006, when the second sponge was discovered. **Id**. at 8-12. We concluded that it was only at that juncture that the injury or its cause was known or knowable. **See Fine v. Checchio**, 870 A.2d 850, 857 (Pa. 2005); **see also Mariner Chestnut Partners, L.P. v. Lenfest**, 152 A.3d 265, 284-85 (Pa.Super. 2016) (finding new cause of action subject to new statute of limitations).

Thus, we hold that the cause of action arising in 2006 upon discovery of a retained surgical sponge of unknown origin in Mrs. Garman's upper right abdominal quadrant was distinct from the cause of action that arose in 1997

for damages related to the sponge in her left lower abdomen.  The "thing sued for," defined by our sister court as the thing in dispute or the matter presented for consideration, was not identical.  ***See McCarthy***, ***supra*** at 820.  **Garman I** was a suit involving a residual sponge in the left lower quadrant of Mrs. Garman's abdomen following the C-section surgery in 1993; **Garman II** involved a sponge discovered in the upper right quadrant of Mrs. Garman's abdomen in 2006, the origin of which could have been either the 1993, 1997, or 1999 surgeries.  Although *res judicata* bars subsequent claims that could have been litigated in the prior action, but which were not, it is beyond cavil that a claim for injuries caused by a retained surgical sponge discovered in 2006 could not have been litigated almost a decade earlier in **Garman I**.

Our decision is consistent with our High Court's decision in ***Daley v. A.W. Chesterton, Inc.***, 37 A.3d 1175 (Pa. 2012), an asbestos exposure case. Therein, the plaintiff was permitted to maintain a second action for mesothelioma after litigating a claim for lung cancer due to exposure to asbestos.  The defendant argued that the second action was barred by the doctrine of *res judicata*.  Our High Court rejected the application of the doctrine, concluding that a cause of action for mesothelioma was distinct from a prior cause of action for lung cancer.  It invoked the "separate disease" rule as a means to avoid recovery of speculative damages, while preserving a plaintiff's right to recover for more than one asbestos-related disease, if a separate disease developed.  We find the rationale apt on the facts herein.

We turn now to whether the doctrine of collateral estoppel barred litigation of the **Garman II** issues. Collateral estoppel is "a broader concept" than *res judicata*, and "operates to prevent a question of law or an issue of fact which has once been litigated and adjudicated finally in a court of competent jurisdiction from being re-litigated in a subsequent suit." ***Day v. Volkswagenwerk Aktiengesellschaft***, 464 A.2d 1313, 1318 (Pa.Super. 1983). Collateral estoppel, or issue preclusion, applies if:

> (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment.

***Chada v. Chada***, 756 A.2d 39, 42-43 (Pa.Super. 2000). While *res judicata* operates to preclude subsequent actions, collateral estoppel operates to preclude re-litigation of issues previously decided only.

Collateral estoppel, unlike *res judicata*, does not require either "identity of causes of action or parties." ***Id***. at 43 (citation omitted). However, as with *res judicata*, the party against whom a plea of collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in question in a prior action. The doctrine can be used offensively as well as defensively. However, the party asserting collateral estoppel must show that "the fact or facts at issue in both instances were identical; and that these facts were essential to the first judgment and were actually litigated in the first cause."

*Muhammad v. Strassburger, McKenna, Messer, Shilobod, & Gutnick*, 587 A.2d 1346, 1348 (Pa. 1991).

**Garman I** did not resolve the issue of whether Raschid and Chambersburg Hospital nurses deviated from the standard of care in leaving behind the sponge discovered in 2006.[2]  Obviously, then, the Garmans did not have a full and fair opportunity to litigate in **Garman I** the ultimate and controlling issues surrounding the negligent retention of the second sponge, as its existence was unknown and unknowable to them at that time.

Additionally, **Garman II** presented many issues that were not present in **Garman I**, including: (1) whether the defendant physicians and hospital staffs from the 1993, 1997, or 1999 surgeries were the cause of the retained sponge discovered in 2006; (2) whether the subsequent treating defendant physicians and hospitals were negligent in failing to timely discover and remove the second sponge; and (3) whether the negligence of Raschid and Chambersburg Hospital was the factual cause of the bowel-related injury sustained by Mrs. Garman due to the presence of the second retained sponge.

---

[2] The Garmans could plausibly have employed collateral estoppel offensively to argue that Raschid and Chambersburg Hospital were estopped from re-litigating in **Garman II** their negligence with regard to sponge counts. However, it is unclear if the verdict in **Garman I** was premised upon a finding of specific negligence in failing to count the sponges, or on a *res ipsa* theory premised on the fact that Raschid and Chambersburg Hospital staff left a foreign body in Mrs. Garman during the 1993 surgery.  In any event, the issue of **whose** negligence was responsible for the yet-to-be-discovered second sponge was not litigated **Garman I**.

Hence, the doctrine of collateral estoppel would not have precluded litigation of these issues in **Garman II**, and would not have entirely barred recovery. For all of these reasons, we conclude that the doctrines of *res judicata* and collateral estoppel did not preclude recovery in **Garman II** for the separate and distinct injury and damages caused by the second retained surgical sponge.

Nor does the "one satisfaction rule," the proposition that "for the same injury, an injured party may have but one satisfaction[,]" preclude recovery for the claims in **Garman II**. *Brown v. City of Pittsburgh*, 186 A.2d 399, 402 (Pa. 1962). The trial court broadly characterized **Garman I** as determinative of whether Raschid and Chambersburg Hospital were negligent with regard to the 1993 C-section, and compensating the Garmans for all damages associated with the 1993 C-section. It did not consider whether the injury was the same, or whether the Garmans could have recovered in **Garman I** damages for a latent injury in **Garman II**.

We find that the Garmans were compensated in **Garman I** for the injuries and damages, past and future, proximately caused by the negligently retained sponge discovered in 1997. We do not believe the **Garman I** jury could have contemplated a separate, yet-to-be-discovered sponge and attendant bowel injury when it fashioned its damage award for future pain and suffering. Indeed, such injuries and damages were unforeseeable and speculative. The payment of the judgment in **Garman I** represented

satisfaction for the injury and damages attributed only to the first sponge, including any future injuries or damages flowing from the negligent retention of that sponge.

The injuries and damages resulting from the second sponge are separate and severable. The trial court in **Garman II** acknowledged that, and correctly instructed the jury to award damages limited solely to the second sponge discovered in 2006. **See Garman II** Order, 7/21/10, at 6). (confirmation by the court that it instructed the jury that the Garmans had been previously compensated for the first retained sponge and that any damages should relate only to the harm caused by the second retained sponge).

For these reasons, we find that Angino and the Law Firm failed to establish that collateral estoppel, res judicata, and the one satisfaction rule were alternative legal theories upon which the Garmans would have been barred from recovering their verdict in **Garman II**. Hence, the trial court's grant of summary judgment in favor of Angino and the Law Firm, based on its finding that their negligence was not, as a matter of law, the proximate cause of the Garmans' loss, is legally incorrect. Summary judgment was improperly entered.

In light of the foregoing disposition, we need not reach the alternative grounds for reversal urged by the Garmans.[3]

Judgment vacated. Case remanded. Jurisdiction relinquished.

Judge Olson joins the opinion.

Judge Stabile files a dissenting opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/30/2020

---

[3] We note, however, that the Garmans' third issue that the trial court's consideration of the defenses of *res judicata*, collateral estoppel, and the one satisfaction rule violated the collateral attack doctrine or the coordinate jurisdiction rule fails to appreciate that the underlying medical malpractice claim and the instant legal malpractice claim are not the same causes of action. **See Heldring v. Lundy Beldecos & Milby, P.C.**, 151 A.3d 634, 644-45 (Pa.Super. 2016). Additionally, contrary to the Garmans' contention that our failure to address these defenses on appeal from the judgment in **Garman II** was a "tacit affirmation of those rulings," no inference can be drawn as to the merit of these defenses from the fact that this Court did not need to reach them to dispose of that appeal. **See** Appellants' brief at 33. Finally, Appellants' fourth issue misses the mark. Judicial estoppel cannot be invoked against Angino and the Law Firm as they were counsel for the Garmans in **Garman II**, not parties. **See Trowbridge v. Scranton Artificial Limb Company**, 747 A.2d 862, 864 (Pa. 2000) (holding a party" is estopped from assuming a position inconsistent with his or her assertion in a previous action, if his or her contention was successfully maintained"). Similarly, collateral estoppel applies only when the issue was decided against the same party or privy in the prior action, not counsel.