J-A11044-19

2020 PA Super 75

KENT GARMAN AND KELLY GARMAN

           Appellants

           v.

RICHARD ANGINO, ESQUIRE AND
ANGINO AND ROVNER

           Appellees

IN THE SUPERIOR COURT
   OF PENNSYLVANIA

No. 1079 MDA 2018

Appeal from the Order entered May 30, 2018
In the Court of Common Pleas of Dauphin County
Civil Division at No: 2014-7513-CV

BEFORE:  BOWES, OLSON, and STABILE, JJ.

DISSENTING OPINION BY STABILE, J.:    **FILED: MARCH 30, 2020**

The Majority concludes the trial court erred in granting summary judgment in favor of Appellees.  As the Majority recognizes, our scope of review of a trial court's order granting summary judgment is plenary and "our standard of review is clear:  the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion."  Majority Opinion at 6 (quoting **Kowalski v. TOA PA V, L.P.**, 206 A.3d 1148, 1156 (Pa. Super. 2019) (alterations omitted)).  In this instance, I find neither error of law nor abuse of discretion in the trial court's grant of summary judgment.  Therefore, I respectfully dissent.

Here, we have the situation in which the Garmans obtained a judgment in **Garman I** for damages resulting from the negligent acts of Dr. Raschid and

Chambersburg Hospital during Mrs. Garman's 1993 cesarean section. The Garmans then obtained a judgment in **Garman II** against Dr. Raschid and Chambersburg Hospital for damages that also stemmed—and stemmed *solely*—from their negligent acts that occurred during the 1993 surgery. The jury in **Garman II** found no negligence on the part of any defendants with regard to Mrs. Garman's 1997 or 1999 surgeries, and the Garmans' expert concluded the second sponge was retained during the 1993 surgery.

The judgment in **Garman II** was vacated by this Court on appeal, not because the Garmans had obtained a verdict in **Garman I** but, rather, because the amended complaint in **Garman II**—asserting for the first time in that case a claim of negligence for the 1993 surgery—was filed after the statute of limitations expired. Therefore, because the Garmans must prove "a case within a case" in their legal malpractice action, **see Kituskie v. Corbman**, 714 A.2d 1027, 1030 (Pa. 1998), they must prove they would have recovered a judgment against Dr. Raschid and Chambersburg Hospital in **Garman II**. Only after proving, by a preponderance of the evidence, that they would have recovered a judgment in the underlying action can they proceed with proof that Mr. Angino was negligent in the handling of **Garman II** and that his negligence was the proximate cause of their loss. In essence, the Garmans must initially prove they would have prevailed on claims relating to the 1993 surgery if those claims had been timely raised in **Garman II**.

The Majority suggests that "the same type of negligent conduct on the part of [Dr.] Raschid and Chambersburg Hospital in 1993 caused two distinct injuries: one discovered in 1997, and the other discovered in 2006." Majority Opinion at 10. I submit that, in reality, it was the **same negligent conduct**, not the **same *type* of negligent conduct**, that caused all of Mrs. Garman's injuries and that all of that negligent conduct occurred during the 1993 surgery.

As the Majority recognizes, in ***Garman I***, Mrs. Garman alleged that Dr. Raschid was negligent for, *inter alia*, "failing to assure that all surgical materials were removed, *in toto*; failing to ensure accurate sponge counts; and failing to recognize that **a** sponge had been left behind during the surgery he performed." ***Id.*** at 11 (citing ***Garman I*** complaint at ¶ 30(a)-(c)) (emphasis in original). Mrs. Garman did not merely assert that she was seeking damages for "leaving behind one surgical sponge," as the Majority maintains. She sought damages for all negligent conduct on the part of Dr. Raschid and Chambersburg Hospital during the 1993 surgery, including their failure to assure that all surgical instruments and materials were removed as well as their failure to ensure an accurate sponge count. ***See Garman I*** Complaint at ¶¶ 30(a)-(c) and 48 (a)-(e). She claimed damages not just for "one sponge," but for past and future medical expenses, past and future pain and suffering, lost earnings and earning capacity, and permanent scarring and disfigurement. ***Id.*** at ¶¶ 31-36; 49-54.

It is true that Mrs. Garman initiated an action in **Garman II** that asserted claims of negligence against additional parties for alleged negligence in Mrs. Garman's 1997 and 1999 surgeries. She subsequently—and in an untimely fashion—added negligence claims in **Garman II** that related to the 1993 surgery, for which the jury awarded her damages in **Garman I**. At the conclusion of the trial in **Garman II**, the jury found negligence on the parts of Dr. Raschid and Chambersburg Hospital only, and that negligence stemmed from the 1993 surgery only.

With respect to *res judicata*, in **Robinson Coal Co. v. Goodall**, 72 A.3d 685 (Pa. Super. 2013), this Court stated:

> The doctrine of *res judicata* prevents a party from instituting litigation that has been the subject of a lawsuit. We explained the concept in **Stoeckinger v. Presidential Financial Corp. of Delaware Valley**, 948 A.2d 828, 832 n. 2 (Pa. Super. 2008) (footnote omitted):
>
>> "*Res judicata*" means "a thing adjudged" or a matter settled by judgment. Traditionally, American courts have used the term *res judicata* to indicate claim preclusion, *i.e.*, the rule that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and constitutes for them an absolute bar to a subsequent action involving the same claim, demand or cause of action.
>
> "Application of the doctrine of *res judicata* as an absolute bar to a subsequent action requires that the two actions possess the following common elements: '(1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of the parties; (4) identity of the capacity of the parties.'" **Id.** at 832 (quoting **Dempsey v. Cessna Aircraft Co.**, 439 Pa. Super. 172, 653 A.2d 679, 681 (Pa. Super. 1995) (*en banc*)).

**Id.** at 689.

The trial court in the instant matter determined:

In both Garman I and II, the issues were the same in that [Appellants] asserted negligence by the nursing staff at the hospital and the vicarious liability of Dr. Raschid for failure to make an accurate sponge count and the associated damages arising from the October 18, 1993 C-section surgery. The causes of action against both defendants were identical and individual parties were in the same capacity in both cases, [*i.e.*,] doctor and patient.

Trial Court Opinion, 5/30/18, at ¶ 9. As the trial court's analysis reflects, and the record confirms, each of the elements of the *res judicata* test is satisfied.

In its discussion of *res judicata*, the Majority imprecisely characterizes *Garman I* as "a cause of action in negligence resulting from the failure to remove one sponge during the 1993 C-section surgery" that was discovered during her 1997 surgery. Majority Opinion at 10. The Majority contends "[t]he damages sought related solely to the one sponge, which had formed an abscess at that location." *Id.* However, as explained above, in *Garman I*, the Garmans alleged negligence not only for leaving behind a sponge but also, *inter alia*, for failing to ensure the sponge counts were correct, failing to properly check for and remove all foreign bodies left behind in the 1993 surgery, and failing to properly supervise the nursing staff to ensure they performed proper sponge counts. *See Garman I*, Complaint at ¶¶ 30(a)-(c), and 48(a)-(e). Therefore, the claims in *Garman I* were not simply claims for "a sponge" and, I believe, encompass any foreign bodies left behind in the 1993 surgery, including the sponge removed in 2006.

The Majority attempts to draw a parallel between the instant case and ***Daley v. A.W. Chesterton, Inc.***, 37 A.3d 1175 (Pa. 2012). Majority Opinion at 16. In that case, the plaintiff was not barred by *res judicata* from pursuing a mesothelioma claim despite previously maintaining a lung cancer claim for asbestos exposure. Unquestionably, our Supreme Court has adopted the "two disease rule" in asbestos cases such as ***Daley***. However, in ***Zieber v. Bogert***, 773 A.2d 758 (Pa. 2001), the Court rejected the plaintiffs' contention "that the two-disease rule has been adopted without restriction in medical malpractice cases," ***id.*** at 763 n.6, and recognized that the logic of limiting a plaintiff to a single cause of action "is sound, considering that the action is based upon **the single event of medical negligence**." ***Id.*** at 762-63 (emphasis added). A "single event of medical negligence" is precisely what is at issue here.

Regarding collateral estoppel, or issue preclusion, this Court has explained:

> Collateral estoppel applies if (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment.

***Heldring v. Lundy, Beldecos & Milby, P.C.***, 151 A.3d 634, 644 (Pa. Super. 2016) (quoting ***Selective Way Ins. Co. v. Hospitality Grp. Servs., Inc.***,

119 A.3d 1035, 1042 (Pa. Super. 2015)). For collateral estoppel to apply, all of these elements must be met. *Id.*

Here, the trial court concluded:

Collateral estoppel applies in this matter as the issue decided in the prior action (Garman I), i.e., the negligence by the nursing staff at the hospital and the vicarious liability of Dr. Raschid for failure to make an accurate sponge count and the associated damages arising from the October 18, 1993 C-section, was identical to the one presented in the later action (Garman II). A final judgment on the merits in Garman I was satisfied and the Garman[s] had a full and fair opportunity to litigate the issue in question in the prior action which led to a jury verdict in their favor. Accordingly, collateral estoppel applies thereby barring this legal malpractice action for failure to establish that the underlying case was meritorious.

Trial Court Order, 5/30/18, at ¶ 10.

The Majority suggests that "**Garman I** did not resolve the issue of whether [Dr.] Raschid and Chambersburg Hospital nurses deviated from the standard of care in leaving behind the sponge discovered in 2006." Majority Opinion at 18. Nowhere in the record is there the slightest suggestion that the sponge discovered in 2006 was left behind at any time other than at the time of Mrs. Garman's 1993 surgery. That is when the negligence occurred. Whether the sponge was discovered in 1997 or 2006 does not alter the fact the sponge was left behind due to the negligence of Dr. Raschid and Chambersburg Hospital in 1993, negligence for which Mrs. Garman recovered damages in **Garman I**.

In both **Garman I** and **Garman II**, Appellants claimed negligence on the part of Dr. Raschid and Chambersburg Hospital for failure to remove all

sponges utilized in the course of the 1993 surgery. There was a final judgment on the merits in *Garman I*; the parties were the same—with respect to all claims involving the 1993 surgery; they had an opportunity to litigate the issue in *Garman I*; and the determination in *Garman I* was essential to the judgment entered in that case. Because all elements of collateral estoppel are present, the doctrine applies. I believe the trial court properly determined that the Garmans were collaterally estopped from reasserting their negligence claims in *Garman II*.

Finally, with regard to the one satisfaction rule, this Court explained that "[t]he rationale underlying the rule is clear—the remedy provided to an injured person is to receive only one full compensation for the wrong done to him." *Brandt v. Eagle*, 602 A.2d 1364, 1367 (Pa. Super. 1992) (citation omitted). "Moreover, once the judgment is marked satisfied, the plaintiff is legally barred from further recovery against any of the tort-feasors because the law presumes that full satisfaction for the harm incurred has been received." *Id.* (citation omitted).

Here, the trial court observed:

The one satisfaction rule applies in the instant matter because in Garman I the Garman[s] asserted and fully litigated negligence causes of action[] against Dr. Raschid and Chambersburg Hospital for their failure to make an accurate sponge count and related negligence in connection with Mrs. Garman's October 18, 1993 C-section surgery. Specifically, in Garman I, Dr. Raschid was sued for failing to make an accurate sponge count during the October 18, 1993 C-Section surgery, not removing all foreign objects, in toto, and for failing to order studies following that surgery to discover retained foreign objects. In Garman II, Dr. Raschid was

sued again for failing to make an accurate sponge count and discover retained foreign bodies during the same October 18, 1993 surgery. . . . **The court instructed the Garman I jury to compensate Mrs. Garman for all future damages**, including those relating to pain and suffering, embarrassment and humiliation, disfigurement and enjoyment of life, suffered **as a result of the failure to remove the foreign objects**, **in toto**. The jury considered and awarded future damages to Mrs. Garman. Such future damages are the same damages that the Garmans sought and recovered once again in Garman II.

Trial Court Order, 5/30/18, at ¶¶ 5-6 (some capitalization omitted) (emphasis added). I find no error in the trial court's conclusion. The jury in *Garman I* was instructed to determine whether Dr. Raschid and Chambersburg Hospital were negligent with regard to the 1993 C-section. After determining both were negligent, the jury awarded damages in accordance with the trial court's instruction that damages compensate Mrs. Garman for all past and future damages stemming from the negligence of Dr. Raschid and Chambersburg Hospital. "[W]e presume that juries follow the trial court's instructions." *Mader v. Duquesne Light Company*, 199 A.3d 1258, 1265 (Pa. Super. 2018) (citation omitted). Because the jury in *Garman I* awarded damages for the negligence of Dr. Raschid and Chambersburg Hospital associated with the 1993 C-section, the Garmans could not recover damages in *Garman II*, or any other subsequent action, for that same negligence.

Because I find no error on the part of the trial court for entering summary judgment in *Garman II* based on application of the three affirmative defenses, I would not disturb the trial court's ruling.

Because the Majority vacated the trial court's summary judgment order based on the three affirmative defenses, it did not examine the Garmans' remaining issues, except for a brief reference to their third and fourth issues. **See** Majority Opinion at 21 n. 3. While I find no basis for vacating the trial court's order on either of those issues or the remaining issue, I believe it appropriate to address each one briefly.[1]

In their second issue, the Garmans assert trial court error for making factual assumptions and/or drawing inferences in a light favorable to Mr. Angino and the Law Firm. Specifically, the Garmans challenge the findings of fact as reflected in Paragraphs 6 through 9 of the trial court's May 30, 2018 order. **See** Appellants' Rule 1925(b) Statement at ¶ 6. The Garmans also assert the court's grant of summary judgment constituted error of law because the record was insufficient to justify judgment in Appellees' favor.

In its Rule 1925(a) opinion, the trial court explained that the findings set forth in Paragraphs 6 and 9 of its May 30, 2018 order were based on its comparisons of the **Garman I** complaint, which was an exhibit to Appellees' motion for summary judgment, and the amended complaint filed in **Garman II**.[2] In addition, the court considered the verdict slips completed by the juries

---

[1] The Majority re-ordered the Garmans' issues. I am addressing them in the order adopted by the Majority.

[2] While it is true that the amended complaint in **Garman II** included claims against additional parties with respect to the 1997 and 1999 surgeries, the

in the two cases in assessing whether the damages related to the 1993 negligence of Dr. Raschid and Chambersburg were the same in both cases. The court concluded the damages in both cases were awarded for that negligent conduct. As such, the findings in Paragraphs 6 and 9 "were based on facts of record." Trial Court Rule 1925(a) Opinion, 7/30/18, at 4. I discern no "impermissible fact-finding" in the two referenced paragraphs of the trial court's May 30, 2018 order. Further, I reject the Garmans' suggestion that the facts set forth in those paragraphs represent a reading of the record in a light favorable to Appellees.

The Garmans raise the same "impermissible fact-finding" argument with respect to Paragraphs 7 and 8 of the May 30, 2018 order. However, as the trial court correctly recognizes, neither of those paragraphs includes any findings of fact. Rather, "paragraph 7 merely sets forth the elements of a legal malpractice action while paragraph 8 contains a conclusion of law." *Id.* at 4. My reading of the paragraphs in question confirms the trial court's representation of their contents.

Because the Garmans have failed to substantiate their contention that the trial court erred as a matter of law in granting summary judgment by

---

jury found no negligence on the part of any of those parties for those surgeries. Therefore, the trial court's comparison of the facts of *Garman I* and *Garman II* was appropriately limited to allegations involving Dr. Raschid and Chambersburg Hospital and the negligence alleged regarding the 1993 surgery.

making factual assumptions and/or drawing inferences in favor of Appellees, their second issue fails.

In the third issue, the Garmans argue that the trial court erred by applying the "three affirmative defenses" to determine that the Garmans could not have won their underlying medical malpractice case (**Garman II**), even though those defenses "had been specifically rejected" in **Garman II** by both the trial court and this Court on appeal.  Appellant's Brief at 5.  They also claim, in their fourth issue, that the trial court's application of the three affirmative defenses was precluded by the doctrines of collateral estoppel and/or judicial estopped because those defenses had rejected by the courts in the underlying case.  I address these issues together.

The Garmans contend the trial court's consideration of the three affirmative defenses in the instant legal malpractice action violated the coordinate jurisdiction rule.  They claim the **Garman II** trial court determined those defenses did not preclude the jury from returning its verdict in favor of the Garmans for the negligence of Dr. Raschid and Chambersburg Hospital relating to Mrs. Garman's 1993 surgery.  However, the coordinate jurisdiction rule is inapplicable here.

As Appellees correctly note, the coordinate jurisdiction rule recognizes that "judges of coordinate jurisdiction **sitting in the same case** should not overrule each other's decision."  Appellees' Brief at 36 (quoting **Commonwealth v. Starr**, 664 A.2d 1326, 1331 (Pa. 1995) (emphasis

added)).  However, "this legal malpractice action is a distinctly different case [from] the underlying Garman II medical malpractice action." ***Id.  See also Heldring, supra***, 151 A.3d at 644-45.  Moreover, this Court did not "reject" the defenses, as Appellants suggest.  Rather, this Court "concluded that the statute of limitations bars the only claim of negligence for which the jury found Dr. Raschid and Chambersburg Hospital liable." ***Garman v. Heine, Raschid and Chambersburg Hospital***, 1367 MDA 2010 at 18 (Pa. Super. filed August 8, 2011).  Consequently, the Court did not consider the three affirmative defenses.  The Garmans speculate that deciding ***Garman II*** without addressing the three affirmative defenses, which Appellants characterize as a "punt" by this Court,[3] "weighs strongly in favor of the inference that the Court . . . agreed with the decision of the Garman II trial court."  Appellants' Brief at 33.  Such speculation is unjustified, as is the Garmans' speculation as to what our Supreme Court *might have* decided had it not dismissed the appeal. ***See*** Appellants' Motion for Reconsideration, 6/7/18, at ¶ 18.[4]

---

[3] ***See*** Appellants' Motion for Reconsideration, 6/7/18, at ¶ 13 and Appellants' Rule 1925(b) Statement at ¶ 14.

[4] As our Supreme Court instructed in ***Commonwealth v. Tilghman***, 673 A.2d 898 (Pa. 1996):

> In the circumstance where we have accepted an issue by granting allowance of appeal, and this Court, after conducting our review of the issue, enters an order dismissing the appeal as having been *improvidently granted*, the effect is as though this Court never granted allowance of appeal.  In other words, a dismissal as being

As Appellees recognize, "[t]he trial court did not reopen questions decided by another judge of the same court, or by a higher court, in an earlier phase of this matter and thus, did not create an inconsistent legal ruling." Appellees' Brief at 36-37. Despite the Garmans' claim to the contrary, this Court did not rule on the application of the three affirmative defenses and this Court is not precluded from doing so by the coordinate jurisdiction rule.

Similarly, this Court is not precluded from considering the affirmative defenses based on judicial estoppel, which prevents a party from taking a position inconsistent with his position in a previous case. *See, e.g., Trowbridge v. Scranton Artificial Limb Company*, 747 A.2d 862, 864 (Pa. 2000). Here, judicial estoppel does not apply because Appellees were not parties to the previous action.

Because I believe the Garmans have failed to establish any error of law or abuse of discretion in the trial court's grant of summary judgment, I would affirm the trial court's order.[5]

---

*improvidently granted* has the exact same effect as if this Court had denied the petition for allowance of appeal (allocatur) in the first place. Where we dismiss an appeal as ***improvidently granted***, the lower tribunal's opinion and order stand as a decision of that court and this Court's order has *no* precedential value.

*Id.* at 904 (emphasis in original).

[5] I do not express any opinion regarding the merits of any negligence or breach of contract claims asserted by the Garmans in this legal malpractice action

- 14 -

J-A11044-19

_____

with respect to Appellees' representation of the Garmans in **Garman II**.  As explained above, the Garmans were tasked with proving their "case within a case" before the trial court could consider any proof that Appellees were negligent in their handling of **Garman II**.  The Garmans were not able to satisfy their burden of proof.  Therefore, the legal malpractice claims were not considered by the trial court and their merit, or lack thereof, is not before this Court.